407 So.2d 396 (1981)
Michael SATZ, As Assigned State Attorney, Appellant,
v.
Gary BLANKENSHIP, Appellee.
No. 81-1824.
District Court of Appeal of Florida, Fourth District.
December 23, 1981.
As Modified on Rehearing and/or Clarification and Motion for Rehearing December 30, 1981.
*397 Michael J. Satz, State Atty., pro se, and Paul H. Zacks, Asst. State Atty., Fort Lauderdale, for appellant.
Florence Beth Snyder, West Palm Beach, for appellee.
Charles C. Chillingworth, Palm Beach, for amicus curiae, David L. Reid.
As Modified on Appellant's Motion for Rehearing and/or Clarification and Amicus Curiae's Motion for Rehearing December 30, 1981.
GLICKSTEIN, Judge.
Appellant is the State Attorney of the Seventeenth Judicial Circuit of Florida and was appointed by the Governor's office as special prosecutor in the case of State v. David L. Reid, now pending in the Fifteenth Judicial Circuit. In the course of the investigation of Reid, he came into possession of certain tape recorded conversations. Following demand for discovery by Reid, appellant allowed Reid's attorney to copy the tape recordings.
Appellee is a newspaper reporter. Pursuant to section 119.07(1) Florida Statutes (1979),[1] he requested access to the tape recordings for the purpose of making copies. When appellant refused, appellee brought a petition for alternative writ of mandamus. After issuing the writ, the trial court entered an order requiring appellant to produce the tapes in order to afford appellee the opportunity to listen to and copy them at his expense and granting appellant a stay, pending the present appeal.[2]
Our inquiry focuses on whether tape recordings are "documents" within the meaning of section 119.011(3)(c)(5), Florida Statutes (1979). That section expressly excludes documents given to an arrestee from an overall exemption of criminal investigative and intelligence information from the open inspection requirement.[3]
Appellant argues that tape recordings are not documents; therefore, he has no duty to release them. By definition, he contends, a document is "[a]n instrument on which is recorded, by means of letters, figures, or marks, the original, official or legal form of something, which may be evidentially used." Black's Law Dictionary 432 (5th ed. 1979). He asks us, when engaged in our task of interpreting this statute, to be guided by two principles of construction: the plain meaning rule, and expressio unius est exclusio alterius; that is, the expression of one thing (documents) implies the exclusion of another.
Although we recognize these canons of construction, we believe the principle enunciated in State v. Webb, 398 So.2d 820 (Fla. 1981), governs here. In that case, the Supreme Court of Florida wrote:
[I]t is a fundamental rule of statutory construction that legislative intent is the *398 polestar by which the court must be guided, and this intent must be given effect even though it may contradict the strict letter of the statute.
Id. at 824.[4]
First, in ascertaining the intent of the Legislature in this case, we look to the general policy behind the Public Records Act. As articulated in section 119.01, Florida Statutes (1979), Florida lawmakers desired an open policy with respect to state, county, and municipal records.[5]
Second, we consider the purpose behind the enactment of the exemptions dealing with criminal intelligence and investigative information in light of the exclusion of certain types of documents from these two exemptions. As defined in section 119.011(3)(a), Florida Statutes (1979), criminal intelligence information refers to information relating to "an identifiable person or group of persons collected by a criminal justice agency in an effort to anticipate, prevent, or monitor possible criminal activity." Criminal investigative information, as defined in subsection (b) of that same section, means information relating to "an identifiable person or group of persons compiled by a criminal justice agency in the course of conducting a criminal investigation of a specific act or omission." These definitions reveal a clear intention to exclude from the public eye legitimate law enforcement secrets.
On the other hand, "[d]ocuments given or required by law or agency rule to be given to the person arrested"[6] are open for public inspection. This provision reveals that once documents are released, the Legislature believed there is no longer a need for secrecy.
Following this analysis, it can be seen that once the tape recordings were given to Reid the information no longer carried with it the legitimacy of law enforcement secrecy. At the point of disclosure, the information became public in a sense and as public information, it lost its efficacy in deterring criminal activity. Accordingly, the trial court acted properly in releasing the tapes to appellee.
A second point was raised on appeal but only by Reid as an amicus curiae. The major portion of his brief argues that the trial judge erred by permitting disclosure of the tapes, thus failing to minimize the effects of prejudicial pretrial publicity. Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).
Because this second point was never raised at trial, we think it inappropriate for an amicus curiae to interject a new issue on appeal. See Robertson v. Hert's Administrators, 312 Ky. 405, 227 S.W.2d 899 (1950). We also recognize that the trial judge in Reid's case is the one who should first consider and deal with the competing considerations involved in limiting pretrial publicity. Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). Moreover, this court is unaware of the text of the tape recordings and is similarly unaware of any action taken or relief sought by Reid in the pending criminal case upon the issue he raises here. Accordingly, we affirm and because Reid's criminal trial is scheduled for January 5, 1982, any motion for rehearing shall be filed by December 29, 1981.
AFFIRMED.
DOWNEY and HERSEY, JJ., concur.
NOTES
[1] Section 119.07(1), Florida Statutes (1979), provides:

(1)(a) Every person who has custody of public records shall permit the records to be inspected and examined by any person desiring to do so, at reasonable times, under reasonable conditions, and under supervision by the custodian of the records or his designee. The custodian shall furnish copies or certified copies of the records upon payment of fees as prescribed by law or, if fees are not prescribed by law, upon payment of the actual cost of duplication of the copies. Unless otherwise provided by law, the fees to be charged for duplication of public records shall be collected, deposited, and accounted for in the manner prescribed for other operating funds of the agency.
(b) In the case of records produced under this act, when the nature or volume of records is such as to require extensive clerical or supervisory assistance by personnel of the agency involved, the agency may charge, in addition to the actual cost of duplication, a reasonable charge, approved by the Department of Administration, for the provision of such clerical or supervisory personnel.
[2] While the notice of appeal refers to a peremptory writ of mandamus rendered on October 2, 1981, the parties' briefs agree that it is the order of October 6th which is the subject of this appeal.
[3] Section 119.07(3)(d), Florida Statutes (1979), expressly exempts active criminal intelligence and investigative information from the open inspection requirement found in section 119.07(1).
[4] As first recognized in Judge Schwartz's opinion, speaking for this court in State ex rel. Veale v. Boca Raton, 353 So.2d 1194 (Fla.4th DCA 1977), the rule that any exemption from the Public Records Act must originate in the legislature and not by judicial decision was adopted by the Supreme Court of Florida in Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla. 1979).
[5] Section 119.01 provides that "[i]t is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person." The definition of "Public records" in section 119.011(1) includes tapes.
[6] Section 119.011(3)(c)(5).