476 So.2d 775 (1985)
David H. BLUDWORTH, Appellant,
v.
PALM BEACH NEWSPAPERS, INC., Etc., et al., Appellees.
Nos. 84-2112, 84-2367.
District Court of Appeal of Florida, Fourth District.
October 16, 1985.
Rehearing Denied November 26, 1985.
*776 David H. Bludworth, State Atty., and Pablo Perhacs, Asst. State Atty., West Palm Beach, for appellant.
L. Martin Reeder, Jr., and Thomas R. Julin of Steel Hector Davis Burns & Middleton, Palm Beach, for appellees.
GLICKSTEIN, Judge.
This is a consolidated appeal of an order, requiring the state attorney to release to the news media all information furnished defense counsel in a criminal investigation, and of another order ordering release of a medical examiner's scene investigation report on the same legal basis. We affirm.
This appeal arises from the state attorney's investigation of the circumstances surrounding the death of David Kennedy, whose body was discovered in a hotel room on Wednesday, April 25, 1984. Personnel of the Palm Beach Police Department, Palm Beach County State Attorney's Office, and the County Medical Examiner's Office immediately began investigating, and various newspaper and other media personnel sought unsuccessfully to get information from the official agencies conducting the investigation.
*777 On Friday, April 27, 1984, Palm Beach Newspapers, Inc., and Tony Wharton, later joined by the Miami Herald Publishing Company, filed an emergency complaint to enforce the public records law, and sought a peremptory writ of mandamus for the release of information by the public agencies. The state attorney was one of the named defendants. On the same day the trial court issued a rule to show cause, returnable later that day, pursuant to section 119.11, Florida Statutes (1983). After hearing, the court ordered the defendants to release the information listed in section 119.011(3)(c) as not included in the definitions of "criminal intelligence information" and "criminal investigation information" as those terms are used in the public records law. The information excluded from those definitions, and therefore required by the above order to be released, goes to the time, place and nature of a reported crime, identity of a person arrested or of a crime victim (except of sexual battery or child abuse), the crime charged, documents given or required by law or agency rule to be given to the arrested person, and informations and indictments unless excepted by section 905.26, Florida Statutes (which affects indictments of persons not in custody nor on recognizance). The court further ordered an in camera inspection of the medical examiner's report, showing the cause of Kennedy's death, so that the court could determine whether that report was exempt from disclosure because of a criminal investigation exemption. A subsequent order, based on a May 3, 1984, in camera inspection and filed May 15, 1984, stated the finding that the medical examiner's report did contain active criminal intelligence or investigative information and that the statute therefore permitted the officials to exercise their discretion to determine whether these records, exempt from disclosure, should be released. In the instant situation the court determined that the defendants acted within their discretion. The court indicated, however, that a document might be exempt at one time and cease to be so at another time. It also indicated that parts of the report in this instance appeared releasable, but it did not seem practical at the time to release parts while withholding other parts. The order stated that there must be a compelling government interest in restricting public access to government-held information in order to withhold such information, and that the mere existence of a criminal investigation does not automatically establish such a compelling interest.
On May 14, 1984, Peter Andrew Marchant and David Linwood Door were charged with conspiracy to sell cocaine and sale of cocaine. On May 16, 1984, the state attorney held a press conference at which it was revealed that the two men had been arrested; and that the medical examiner's autopsy report concluded Kennedy died from ingestion of three drugs, cocaine, demerol and mellaril. The chief of police investigating the Kennedy death, Joseph L. Terlizzese, announced a little while later that Kennedy had died between 2 and 3 a.m. of the morning on which his body was found.
The officials continued to refuse to release the records containing the information revealed at the press conference and thereafter, and the plaintiffs went back to court to seek an order requiring release of the Kennedy autopsy report. Upon a May 23, 1984, in camera hearing, the court concluded that the autopsy report no longer posed a threat to the criminal investigation, and there was no compelling reason to continue to withhold it. Although a former statutory provision constituted an exception of medical examiner's records from the public disclosure requirements of the public records act, the court found that section had been expressly repealed by section 406.17 of the Medical Examiners Act, Florida Statutes (1983). The court ordered the state attorney to release the autopsy report.
On September 24, 1984, the plaintiffs filed a motion for release of additional public records. The state attorney's office had revealed that various materials had been given to Marchant's and Dorr's lawyers for inspection, pursuant to Florida Rule of *778 Criminal Procedure 3.220, but the state attorney's office refused the media access to the same materials. In their motion before the court the plaintiffs appealed to the authority of the opinion in Satz v. Blankenship, 407 So.2d 396 (Fla. 4th DCA 1981), petition for review denied, 413 So.2d 877 (Fla. 1982).
Mrs. Rose F. Kennedy was permitted to intervene in the hearing on the news media's motion. The hearing was held September 28, 1984. Mrs. Kennedy objected to the release of certain documents. She is not a party to this appeal.
On October 1, 1984, the trial court entered an order requiring the state attorney, pursuant to Blankenship, to release to the plaintiffs all information already shared with the criminal defense counsel. The court stated that by virtue of Blankenship material released to criminal defendants under rule 3.220 could not, as a matter of law, remain exempt from disclosure under the public records law.
After the vacation of the automatic stay the state attorney obtained under Florida Rule of Appellate Procedure 9.310(b)(2) as then written, the state attorney applied to this court for a stay pending appeal of the above order. This court granted the state attorney a temporary stay. On October 11, 1984, this court issued an order denying the stay. Bludworth v. Palm Beach Newspapers, Inc., No. 84-212 (Fla. 4th DCA Oct. 11, 1984), reiterated that under Blankenship disclosure of the items disclosed to the criminal defendants was required. The court also said the motion to stay was insufficient because it did not state why the trial court's order would result in irreparable injury.
The state attorney then filed a new motion for a stay in the trial court and a motion for a protective order in the Marchant-Dorr criminal proceeding. The first of these motions was denied and the state attorney released the stated records. In an additional order of October 12, 1984, the trial court mandated that any records thereafter released by the state attorney to defense counsel in State v. Marchant be revealed to the public unless the state attorney moves to withhold on a theory the records in question are exempt.
When the state attorney refused to make public the medical examiner's crime scene report after it had been shared by the medical examiner with criminal defense counsel, the plaintiffs requested an order of the court directing the state attorney to make that report and other records available for inspection and copying. This motion was granted, as to the medical examiner's report, on October 24, 1984, again on the authority of Blankenship. This order is the basis of the second appeal in this consolidated case. As to other documents whose release plaintiffs sought, the trial court found those still qualified as active criminal investigative information which the defense had not yet received.
The issue is whether section 119.011(3)(c)5, Florida Statutes (1983), which excludes from the definitions of "criminal intelligence information" and "criminal investigation information" "[d]ocuments given or required by law or agency rule to be given to a person arrested," should be construed narrowly so as to refer only to such information as shows the basis for the person's arrest, and not to encompass all information shared by the state with the criminal defendant pursuant to Florida Rule of Criminal Procedure 3.220, thus receding from Blankenship. We conclude that it should not.

I
The state attorney's first argument which we wish to discuss is that this court failed to focus on the distinction in meaning between the expression "person arrested" as used in section 119.011(3)(c)5 and the term "defendant" as that term figures in the application of rule 3.220; that, as a result, Blankenship was wrongly decided; and that, accordingly, the trial court in the present case, and this court in its order denying the motion to stay on one of the orders here under appeal, have also been wrong.
*779 In Blankenship, the items to which a reporter sought to have access were tape recordings obtained by the state attorney and, upon a demand for discovery, already shared with the criminal defendant. This court ruled that the tape recordings were documents within the meaning of section 119.011(3)(c)5, and held that once access had been given the criminal defendant the legislature did not intend that they be withheld from others. The most directly pertinent paragraph of the Blankenship opinion is the following:
On the other hand, "[d]ocuments given or required by law or agency rule to be given to the person arrested" are open for public inspection. This provision reveals that once documents are released, the Legislature believed there is no longer a need for secrecy.
407 So.2d at 398 (footnote omitted).
Hopefully, we do not sound defensive by not agreeing with appellant's suggestion of a failure on our part to distinguish between "person arrested" and "criminal defendant." Appellant would urge that "person arrested" comprehends a significant temporal quality; and that when the legislature said that matter shared with a person arrested or required by law or rule to be shared with him would not be considered to be criminal investigative or criminal intelligence information, it had in mind those things customarily shared with a person at or near the time of arrest  the warrant, for example, or the information or indictment. Appellant contends that had the legislature intended to exclude from the exempt matter anything shared with a criminal defendant it would have said "criminal defendant," either instead of or in addition to "person arrested." While such a position is arguable, it is not the only plausible point of view. "Person arrested" describes a person, not an event. When a "person arrested," who has been charged with a crime or is subsequently charged, is or becomes a criminal defendant, he is the same person. A ripened apple is still an apple. To us, "person arrested" describes a broader category of persons than "criminal defendant," for it can be applied to both criminal defendants and persons who are arrested and never become criminal defendants. The legislature could have felt to mention criminal defendant in addition to person arrested would be redundant, and to substitute criminal defendant for arrested person would be to omit the person arrested but never charged. Given the underlying policy of the Public Records Act  open government to the extent possible in order to preserve our basic freedom, without undermining significant government functions such as crime detection and prosecution  it seems more likely the legislature meant what this court said in Blankenship than what the appellant urges. Thus, we reaffirm what we held in Blankenship; namely, that once documents are released, the legislature intended an end to secrecy about those documents. See 407 So.2d at 398. The legislature has been aware of our earlier decision since 1981, and of the denial of the petition for review thereof by this state's highest court in 1982; and it will be similarly aware of our reaffirmation.[1]

*780 II
Another argument raised by appellant which we wish to discuss is that the Blankenship reading of the exclusion from the exempt categories of information disclosed to the person arrested results in unnecessary conflict with the Code of Professional Responsibility. This argument is somewhat strained. Disciplinary Rule (DR) 7-107 seeks to prevent lawyers in a criminal matter from making statements out of court that are likely to be publicized and that may injure someone's reputation and/or prejudice the outcome. The DR plainly distinguishes, as to the investigatory stage, between such a prohibited statement and the mere release, without elaboration, of information contained in a public record. Appellant argues the Blankenship construction swallows up the DR by making all discovery materials released to the defendant public records, whereas narrow construction of the pertinent language  "person arrested"  would render the statute wholly consonant with the DR. However, we do not see the conflict when the state attorney releases documents procured or created during a criminal investigation and eschews any elaboration on them. How will the state attorney have violated DR 7-107 by releasing, for example, either medical examiner's report in the present case, so long as the state attorney has not put an interpretation on the report that prejudices the defendant or exposes a witness? We do not see how releasing an investigatory document constitutes making an "extrajudicial statement."
We have considered the remaining arguments of the parties but feel discussion is unnecessary.
HERSEY, C.J., and DOWNEY, J., concur.
NOTES
[1] As for appellant's argument in opposition to the holding in Blankenship; namely, that it is incongruous to say that anything disclosed to the defendant ceases to be secret from the public when the public records statute says criminal investigative or intelligence information directly related to a pending criminal trial or appeal is "active" unless time-barred, section 119.011(3)(d), and that active criminal investigative or intelligence information is exempt from disclosure under the statute, section 119.07(2)(d), we suggest that information communicated to a person arrested is by statute excluded from the definitions of criminal intelligence information and criminal investigative information. Something that is not criminal intelligence information or criminal investigative information cannot be active criminal intelligence information or active criminal investigative information. A further, though not wholly independent, reason to support the trial court's conclusions in the orders here under appeal, lies in the fact that the Public Records Law first states all-inclusively that state, county and municipal records shall at all times be open for personal inspection by anyone. § 119.01. Then the statute lists specific exemptions of certain public records. § 119.07(3). The rules of statutory interpretation include the principle that when the legislature has enumerated exceptions it has shown that it intends to leave all unmentioned items subject to the law. As a result the courts have carefully avoided in connection with the Public Records Act creating any judicial exceptions to disclosure. See State ex rel. Veale v. City of Boca Raton, 353 So.2d 1194, 1197 (Fla. 4th DCA 1977). It is no great extension of this logic to say that when in doubt the courts should find in favor of disclosure rather than secrecy. The legislature can always add to the exemptions, as it has occasionally done, if it feels the courts have misinterpreted the legislative intent. See Wait v. Florida Power & Light Company, 372 So.2d 420, 423 (Fla. 1979). Expansion of the exemptions from disclosure, rather than of the exclusions from the categories called criminal investigative and criminal intelligence information, is the area of which the courts ought to be chary, given the overarching policy of the Public Records Act.