522 So.2d 931 (1988)
Ernest Charles DOWNS, Appellant,
v.
Ed AUSTIN, Appellee.
No. BR-184.
District Court of Appeal of Florida, First District.
March 11, 1988.
Rehearing Denied April 28, 1988.
Stephen N. Young of Kramer, Levin, Nessen, Kamin & Frankel, New York City, *932 and Elizabeth L. White of Sheppard & White, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Raymond L. Marky and John W. Tiedemann, Asst. Attys. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
Appellant, Ernest Charles Downs, appeals from the trial court's refusal to issue a writ of mandamus to compel appellee, State Attorney Ed Austin, to disclose the results of four polygraph tests which the State administered to Larry Johnson, Downs' accomplice in the murder of Jerry Harris. The issue in this case is whether Downs has the right under the Public Records Act to examine and copy the records of Johnson's polygraph tests. We reverse.
To illustrate precisely why Downs wants to examine Johnson's polygraph tests, it is necessary that we briefly recount the facts surrounding Downs' conviction as set forth in the affirmance of his appeal. See Downs v. State, 386 So.2d 788 (Fla. 1980). In April of 1977, John Barfield approached Downs with an offer of $5,000 to kill Forrest Jerry Harris, a Jacksonville businessman. Downs accepted the offer, and enlisted the help of Larry Johnson. On April 23, 1977, at Downs' urging, Johnson telephoned Harris and identified himself as Joseph Green. Harris was expecting a call from Green, and Johnson told Harris that he wanted to talk to him about importing contraband. The two arranged a meeting in Jacksonville. Downs drove down a dirt road and left Johnson there to await his return with Harris. Downs picked up Harris and drove to the location where he had left Johnson. Harris left the car and approached Johnson. Downs shot Harris four times in the head with a .25 caliber automatic pistol. Together, Downs and Johnson dragged the body off the road into the bushes where Downs again shot Harris in the chest to make sure he was dead. Downs was convicted for the murder of Harris and sentenced to death. He has had two previous appeals. See Downs v. State, 386 So.2d 788 (Fla. 1980); Downs v. State, 453 So.2d 1102 (Fla. 1984). The issue which we consider in the instant case is novel and has not been addressed in either of Downs' prior appeals.
On June 23, 1982, Downs' attorney, Maurice Nessen, appeared before the Clemency Board and alleged that Johnson, rather than Downs, was the triggerman in Harris' murder. This hypothesis rested on two evidentiary sources. The first source was the testimony of Harry Felder Murray, cellmate of the mastermind of Harris' murder, John Barfield. Murray testified before Circuit Judge Dorothy Pate that Johnson, rather than Downs, actually pulled the trigger on Harris. The second source was the sworn affidavit of Barfield himself which echoed Murray's depiction of the murder.
Nessen made another contention to the Clemency Board which proceeded on a separate, but related, premise that was connected to the circumstances surrounding Johnson's capture by police after Harris' murder. According to Downs, the police offered Johnson complete immunity from prosecution if he would: (1) tell them the complete truth; (2) not be found to be the triggerman in Harris's murder; (3) testify against all other parties; (4) produce physical evidence of the crime  that is, Harris' body. Nessen told the Clemency Board that Johnson had an irresistible temptation to tell authorities that Downs had actually murdered Harris because Johnson's freedom depended on his deal with the prosecutors that he not have been the triggerman.
Downs wants to inspect Johnson's polygraph tests because State Attorney Austin referred to these tests at the Clemency Board hearing. Austin's reference to the tests was as follows:
He [Johnson] passed the polygraph with flying colors that he was not the triggerman, that Downs was the triggerman and we went ahead with it and used Johnson.
After Austin made the statement, Nessen presented his case to the Clemency Board. At the conclusion of Nessen's remarks, one of the Cabinet members, Mr. Gunter, asked:

*933 MR. GUNTER: Mr. Nessen, how do you respond to the fact that Larry Johnson has taken and passed the polygraph test that he was not the triggerman?
MR. NESSEN: I haven't seen those polygraph tests.... But I don't know what's in those polygraph tests and we're going to make a motion in court to see them unless Mr. Austin would be so gracious and give it to us and have an expert look at them.
Austin has never furnished Downs with Johnson's polygraph test results, and for this reason Downs filed a complaint and petition for writ of mandamus in the Circuit Court of Duval County. Downs' first count alleged that under the due process clause of the Florida Constitution, he was entitled to examine Johnson's test results, and that Austin's statement indicating Johnson passed the lie detector test "with flying colors" tainted the proceedings before the Clemency Board, and thus worked to deny him his due process rights under the Florida Constitution. As to his first count, Downs sought an injunction requiring Austin to disclose all records showing the results of Johnson's polygraph tests. Downs' second cause of action sought a writ of mandamus under section 119.11, Florida Statutes (1981), commanding Austin to perform his ministerial duty and permit Downs to inspect, copy, and examine the public records of the Duval County District Attorney's office showing the results of Johnson's polygraph tests. The State filed a motion to dismiss both counts of Downs' complaint which the trial court granted. The trial court found that Count I of Downs' complaint failed to state a cause of action. As to Count II, the court found the information Downs sought via the Public Records Act was exempt from inspection under sections 119.011(3)(d), 119.07(3)(d), and 119.07(3)(j), Florida Statutes (1981). Downs appeals from this final order of dismissal.
Only days before we held oral argument for this case, the Florida Supreme Court reversed Downs' murder conviction. See Downs v. Dugger, 514 So.2d 1069 (Fla. 1987). Counsel for the State informed us at oral argument that the State would, if necessary, seek reversal of the Florida Supreme Court's decision by petitioning for a writ of certiorari before the United States Supreme Court. Thus, although Downs' original reason for seeking the polygraph results  to further his case before the Florida Clemency Board  is not an immediate concern, these results may yet be significant in some future proceeding. Indeed, should the Florida Supreme Court's recent determination that Downs is entitled to a new sentencing hearing before a new jury be reversed, Downs may again find himself before the Clemency Board. The issue raised in this appeal, therefore, is not moot.
We first dispense with the State's argument that we have no jurisdiction to determine the propriety of the Clemency Board hearings, and that separation of powers principles prevent us from passing on the correctness of the Board's proceedings. Our holding today concerns the trial court's error. We do not determine the correctness of the proceedings before the Board.
The purpose of the Public Records Act is stated in section 119.01, Florida Statutes (1985), which provides, "[i]t is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person." Promoting access to public records is the overarching feature of the Act, and this fact is illustrated by the expressions of virtually every Florida appellate court which has been called upon to interpret the statute. "The Public Records Act is to be liberally construed in favor of `open government to the extent possible in order to preserve our basic freedom, without undermining significant government functions such as crime detection and prosecution... .'" Tribune Co. v. Public Records, 493 So.2d 480, 483 (Fla. 2d DCA 1986) (citing Bludworth v. Palm Beach Newspapers, Inc., 476 So.2d 775, 779 (Fla. 4th DCA 1985)). Exemptions from disclosure are to be construed narrowly and limited to their stated purposes. Miami Herald Publishing Co. v. City of North Miami, 452 So.2d 572 (Fla. 3d DCA 1984). "[W]hen in doubt, *934 the court should find in favor of disclosure rather than secrecy." Bludworth, 476 So.2d at 780 n. 1.
The instant appeal concerns the application of section 119.07(3)(j) (1985), which provides:
All criminal intelligence and criminal investigative information received by a criminal justice agency prior to January 25, 1979, is exempt from the provisions of subsection (1).[1]
For several reasons, we do not think disclosure of Downs' polygraph results would thwart the purposes of the exemption found in section 119.07(3)(j). Section 119.07(3)(j) only exempts "criminal intelligence information" and "criminal investigative" information from disclosure. Criminal intelligence information is defined in section 119.011(3)(a), Florida Statutes (1985), as "information with respect to an identifiable person or group of persons collected by a criminal justice agency in an effort to anticipate, prevent, or monitor possible criminal activity." The purpose of section 119.07(3)(j) is to "exclude from the public eye legitimate law enforcement secrets." Satz v. Blankenship, 407 So.2d 396, 398 (Fla. 4th DCA 1981). The statute's language reveals that it is aimed at not inhibiting police efforts in investigating criminal acts which have not yet, or which are presently, occurring. See Satz v. Gore Newspapers Co., 395 So.2d 1274 (Fla. 4th DCA 1981) (test for characterizing investigation is whether its nature is such that a criminal prosecution could result). Disclosure of Johnson's polygraph results would not defeat the purpose of section 119.07(3)(j) because the criminal acts and police investigation leading to Downs' conviction  the murder of Jerry Harris  have already occurred. It would be illogical to prevent Downs from having access to the results merely to serve some statutory purpose, such as preventing police investigations from being inhibited, which has lost its significance through the occurrence of later events.[2]
Criminal investigative information means "information with respect to an identifiable person or group of persons compiled by a criminal justice agency in the course of conducting a criminal investigation of a specific act or omission, including, but not limited to, information derived from laboratory tests, reports of investigators or informants, or any type of surveillance." § 119.011(3)(b), Fla. Stat. (1985). Section 119.011(3)(d)2 indicates that only "active" criminal investigative information is excepted from the Public Records Act's disclosural provisions.[3] The polygraph results which Downs seeks are not active since his petition for mandamus is a post-conviction proceeding which is not a "pending appeal" within the meaning of section 119.011(3)(d)2, Florida Statutes (1985). See Tribune Co. v. Public Records, 493 So.2d 480 (Fla. 2d DCA 1986). Thus, permitting Downs to inspect Johnson's polygraph results would not defeat the purposes underlying section 119.011(3)(a) either because such disclosure would not inhibit police investigation, or because the results are not "active" criminal investigation under the teaching of Tribune Co. v. Public Records.
*935 An additional factor supports our determination that Downs should be permitted to examine Johnson's polygraph tests. Although the State vigorously resists all of Downs' efforts to examine Johnson's test results, State Attorney Austin has already made these results public knowledge on two different occasions  at Downs' sentencing hearing, and before the Clemency Board. In Satz v. Blankenship, 407 So.2d 396, 407 (Fla. 4th DCA 1981), the Fourth DCA, interpreting the provisions of the Public Records Act, found that once access to documents has been given to a criminal defendant, the legislature intended "an end to secrecy about those documents." The Fourth DCA later reaffirmed this conclusion in Bludworth v. Palm Beach Newspapers, Inc., 476 So.2d 775 (Fla. 4th DCA 1985). Satz and Bludworth evince a judicial recognition that once the State has gone public with information which could have previously been protected from disclosure under the Act's exemptions, no further purpose is served by preventing full access to the desired documents or information. Since the State has twice publicly disclosed the results of the polygraph tests to its advantage, there remains little to be hidden from disclosure, and given the Florida Public Records Act's overwhelming preference for complete public access to documents, we find that Downs should be permitted to examine Johnson's polygraph results to determine if they are indeed as Austin represented them to be before the trial court and the Clemency Board. The trial court is therefore directed to issue the writ of mandamus.
REVERSED.
ZEHMER, J., and PEARSON, TILLMAN (Ret.), Associate Judge, concur.
NOTES
[1] Section 119.07(1)(a), Florida Statutes (1985), states that "[e]very person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or his designee."
[2] We are aware of the need to protect information regarding confidential informants, police surveillance techniques, and undercover personnel. Indeed, the Public Records Act specifically exempts such information from disclosure. See sections 119.07(3)(e), (f), and (g), Florida Statutes (1985).
[3] Section 119.011(3)(d)2 provides:

2. Criminal investigative information shall be considered "active" as long as it is related to an ongoing investigation which is continuing with a reasonable, good faith anticipation of securing an arrest or prosecution in the foreseeable future.
In addition, criminal intelligence and criminal investigative information shall be considered "active" while such information is directly related to pending prosecutions or appeals. The word "active" shall not apply to information in cases which are barred from prosecution under the provisions of s. 775.15 or other statute of limitation.