FARMER, Judge.
In a proceeding for a writ of mandamus, the City of Delray Beach was ordered to permit appellee to inspect certain public records from an investigation of a shooting by a city police officer. When the City appealed the granting of the writ we imposed a stay, expedited the appeal and ordered briefs submitted on a short day. After considering the briefs and the parties’ requests for oral argument we dissolve the stay and approve, without further delay, the decision of the trial court.
In the early-morning hours of November 16, 1990, one Ricky Guarine was killed in a shooting by Sgt. Donald West of the City of Delray Beach Police Department. Acting upon a written general standing order of the Department, Lt. James Wilson immediately began an internal investigation of the shooting after receiving a “complaint” that day from the duty dispatcher. Although the Department has forms for citizen complaints against its officers, no written complaint has ever been filed by anyone — in or outside the Department. At the time of the hearing the Department had issued no writing concluding the investigation, but its Chief testified that it was “still active”.
On March 26, 1991, appellee wrote the Department requesting a number of documents connected with the investigation, including all statements relating to the death and a videotaped re-enactment of the shooting. The Department promptly responded in writing permitting inspection of the requested documents except for the statements and the re-enactment. It cited section 112.533, Fla.Stat. (Supp.1990), as authority for exempting the documents from public inspection, but omitted to state anywhere in its response that any investigation was still active.
Appellee then filed a petition for mandamus requiring the City to permit inspection of the refused documents. The court held an expedited hearing at which the City asked the court to review a certain document in camera. Later the request was withdrawn. Lt. Wilson testified as to the course of his investigation in a general way, and the Chief testified that it has not been finished and is still active, all in an *317 effort to establish a “reasonable, good faith anticipation that an administrative finding will be made in the foreseeable future.”
The trial judge concluded that the claimed exemption[1] does not apply and granted the writ. Saying that section 119.-07, Fla.Stat. (Supp.1990), provides for an in camera inspection of certain specified kinds of documents, the court later found that the requested documents were not of the kinds specified in section 119.07. The court also found that the City had not timely requested such an inspection.
On the merits, the court read section 112.533(2)(a) to require that a written complaint be actually filed with the agency [city] and found that none had ever been filed here, thereby eliminating the exemption from disclosure. And even if the section 112.533 exemption were applicable, the court held that the city had failed to rebut the section 112.533(2)(b)[2] presumption that an investigation is inactive if no finding is made within 45 days after the filing of the complaint.
Judge Fine found the testimony of Lt. Wilson and the Chief “conclusory” as to the status of the investigation and noted that the City had elected to forego adducing substantive testimony showing what its allegedly “ongoing” investigation was producing. Weighing the testimony against the presumption, the court found no active investigation.
There is no error in the trial judge’s reading of section 112.533. The statute is headlined “receipt and processing of complaints” and begins by requiring every law enforcement agency to adopt and use a system for the “receipt, investigation, and determination of complaints received by such employing agency from any person.” [e.s.] In contrast, section 112.533(2) begins with the words, “A complaint filed against a law enforcement officer * * *.” [e.s.] As Judge Fine himself noted, the legislature appears to have drawn a distinction in this statute between the receipt of a complaint and the filing of one.
Like him, we perceive a difference in these two locutions. An oral complaint must be “received” by someone at the agency to come to its attention. So, of course, the statute begins with a prescription for the establishment of a system for the receipt of complaints whether they be oral or written. But there is nothing in the statute that requires all complaints to be in writing or precludes the agency from reducing them to writing upon “receipt”.[3]
When, however, a complaint is in writing and has been formally filed with the agency by someone, then (and only then) the exemption of subsection (2) of § 112.533 may be applicable and prevent disclosure before a conclusion of the investigation and the issuance of a formal finding by the employing agency. On the other hand, if the complaint generates documents of the kind described in section 119.07(3), Fla.Stat. (Supp.1990), then it appears that the 45-day inactivity presumption may not be applicable, and the agency seems to have more control over whether the investigation is deemed active and its *318 documents are thus unavailable to the public. There is, however, no assertion of section 119.07(3) documents in this case.
We think that the specific text authored by the legislature reflects an intention that, when someone goes to the trouble of filing a formal written complaint against a law enforcement officer employed by the agency, that kind of complaint will be given a slightly different treatment as to confidentiality than a less formal oral complaint or grievance. At least the language actually employed by the legislature leads us to that conclusion. If we are wrong in that reading, it will be a simple matter for the legislature to correct that impression by substituting words which unambiguously express that contrary intent.
In any case we are confident that our reading is in harmony with the cardinal rule of statutory construction that the words used are the best evidence of the legislative intent where they are, as here, plain and unambiguous. Holly v. Auld, 450 So.2d 217 (Fla.1984). We also find comfort that our exegesis strictly construes the exemption of the statute and liberally vindicates the general policy of openness in section 119.01, Fla.Stat. (1989). Bludworth v. Palm Beach Newspapers Inc., 476 So.2d 775 (Fla. 4th DCA 1985).
We also find no error in the court’s handling of the request for in camera inspection of certain materials and its weighing of the City’s evidence against the statutory presumption. The City argues that the court’s handling of the in camera request prejudiced it in adducing evidence that the investigation was proceeding in a good faith anticipation of an administrative finding in the near future. It refers to the Court’s admonition that an in camera review in connection with questioning of the Chief about three areas of continuing investigation may open the door on cross examination, and thus publication in open court, about the substance of those three areas. The City then elected not to go into the subject but now argues that it was unfairly hampered in proving the good faith necessary for the exemption.
The problem with this argument is that the City voluntarily declined to submit the document to the trial judge for the inspection. In other words it waived its own in camera request, and having done so it can hardly be heard to complain about it on appeal.
The City also misconstrues the operation of the 45-day presumption in subsection (2)(b) against the testimonial protestations of Lt. Wilson and the Chief that their investigation was active and in good faith. We entirely agree with appellee’s argument that the 45-day presumption is of the kind covered by section 90.304, Fla.Stat. (1989). Such presumptions in Florida are not bursting bubbles. They are more properly likened to helium-filled balloons which keep the fact aloft until weightier evidence brings it down. Insurance Company of the State of Pennsylvania v. Estate of Guzman, 421 So.2d 597, 601 (Fla. 4th DCA 1982).
It was exclusively for the trier of fact to weigh the evidence of Lt. Wilson and the Chief against the presumption, not for this court. His finding comes to us clothed with its own presumption of correctness — especially, as here, where there is other record evidence which sustains it. We see no basis on what the City has brought us to go behind the trial judge’s findings of fact and quibble with the quantum of evidence.
It seems to us, as it did to Judge Fine, that the City’s unrelenting focus on the exemption sets the statute against its stated purpose. The primary intent voiced by the legislature in section 112.533, as indeed in chapter 119, is openness and the availability of public records. The exemption in subsection (2)(a) is narrowly and quite specifically drawn; to claim its shelter, the agency must comply precisely with its provisions. That was not done here. The result is that our stay is dissolved and that order is
AFFIRMED.
GUNTHER and WARNER, JJ., concur.

. The pertinent text of the statutory exemption is as follows:
A complaint filed against a law enforcement officer * * * and all information obtained pursuant to the investigation by the agency of such complaint shall be confidential and exempt from the provisions of s. 119.07(1) until the investigation ceases to be active or until the agency head or his designee provides written notice to the officer who is the subject of the complaint [that the investigation has been concluded],

. The text of this statutory presumption is:
For the purposes of this subsection, an investigation shall be considered active as long as it is continuing with a reasonable, good faith anticipation that an administrative finding will be made in the. foreseeable future. An investigation shall be presumed to be inactive if no finding is made within 45 days after the complaint is filed.

.In fact, in this case Lt. Wilson, the internal affairs investigating officer, testified that the city’s written policy, presumably adopted to carry out section 112.533(1), required that the watch commander receiving the complaint "will render into writing the individual’s complaint and forward it up through the chain of command to normally the captain of the affected employee.” Hence if the city had wanted in good faith to be able to claim the subsection (2) exemption later, it might have simply reduced the initial oral complaint to writing at the beginning.