RAMIREZ, J.
The City of Miami, in conjunction with intervenors Mayor Joseph Carollo and the State Attorney of the Eleventh Judicial Circuit, appeal the issuance of a writ of mandamus that ordered the City to disclose information obtained concerning Mayor Carollo’s arrest for misdemeanor battery. Because the materials ordered disclosed in the writ of mandamus did not qualify as public records, we reverse.

The Facts

On February 7, 2001, a 911 emergency call prompted the City of Miami Police to respond to a domestic dispute between Mayor Carollo and his wife at the Carollos’ residence. The police incident report notes that Mrs. Carollo had a golf-ball size hematoma on her left temple, and states that Mrs. Carollo said her husband struck her with a hard object. Mayor Carollo was subsequently arrested and charged with misdemeanor battery. The police took photographs of Mrs. Carollo’s injury and obtained a written statement from her.
On .February 27, 2001, Mayor Carollo filed a written request for discovery in *1003 county court pursuant to rule 3.220(a), Florida Rules of Criminal Procedure. On the same day, Post-Newsweek Stations Florida, Inc. requested the injury photograph and Mrs. Carollo’s statement from the City of Miami Police Department pursuant to the Public Records Act, section 119.07, Florida Statutes (2000). The City responded that the requested documents were exempt from disclosure under section 119.07(3)(b) as “part of an active criminal investigation as defined by [sections] 119.011(3)(b), (c) and (d).”
The next day, Post-Newsweek filed a complaint for writ of mandamus in circuit court to compel the City to provide the requested documents. At the same time, Posb-Newsweek sought the same materials in the pending county court action through a motion to intervene and for access to public records. The State Attorney responded that it did not have possession of the requested materials, but would produce them once obtained and provided to the defendant Mayor Carollo during the discovery process. In the meantime, May- or Carollo and the State Attorney moved to intervene in the civil action to oppose disclosure of the materials.
At his arraignment on March 5, 2001, Mayor Carollo orally withdrew his discovery request and submitted a written withdrawal the next day. The county court with jurisdiction over the battery case authorized the withdrawal of the discovery request. The State Attorney’s Office never provided any discovery to the defendant or his counsel at any time before or after the request was withdrawn.
Before the county court judge could rule on Post Newsweek’s motion for access to public records, the circuit court, on March 12, 2001, issued a writ of mandamus ordering the City to comply with Posb-News-week’s request.[1] The circuit court held that when Mayor Carollo requested discovery, the State Attorney’s Office was then required by law to provide him with the documents. Because the Public Records Act, section 119.07(3)(b), Florida Statutes (2000), does not exempt documents which are required by law to be provided to the defendant, the court determined that the injury photograph and Mrs. Carollo’s statement were not exceptions to the Public Records Act.[2] We disagree that a discovery request alone removes exempt status.

The Law

Section 119.07(3)(b) exempts “active criminal investigative information” from the Public Records Act. Section 119.011(3)(c)5 in turn states that “criminal investigative information” shall not include “documents given or required by law or agency rule to be given to the person arrested.” Our disposition of this case hinges on how we interpret this language. There is no dispute that the documents were never given to the person arrested. Thus, we must decide what documents were “required by law ... to be given.”
*1004 Preliminarily, the injury photograph and Mrs. Carollo’s statement are not documents automatically required by law or agency rule to be given to the person arrested, such as warrants, property inventory lists, or exculpatory materials. The documents at issue here lose their exempt status only when they are “required to be given” to the defendant. See Doe v. State, 587 So.2d 526, 532 (Fla. 4th DCA 1991). It is the discovery notice pursuant to rule 3.220, Florida Rules of Criminal Procedure, which creates an obligation on the part of the State Attorney’s Office to release the documents to the defendant. Absent the discovery notice, the State Attorney’s Office is not required to release the documents to the defendant. Once the State Attorney’s Office releases the requested information to the defendant, the documents attain public record status and lose the exempt status section 119.07(3)(b) provides. See Post-Newsweek Stations Florida, Inc. v. Doe, 612 So.2d 549, 551 (Fla.1993). Thus, it is the release of the documents to the defendant that also makes them subject to disclosure as a public record. See Tribune Co. v. Public Records, P.C.S.O. # 79-85501, 493 So.2d 480 (Fla. 2d DCA 1986).
In this case, the State Attorney’s Office never provided the documents to Mayor Carollo. In fact, it was not obligated to do so until March 13, 2001, at the earliest. See Fla. R.Crim. P. 3.220(b)(1) (prosecutor has fifteen days within which to comply with the Notice of Discovery). Arguably, the demand for discovery on February 27, 2001, may have been a nullity because the language of rule 3.220(a) does not authorize a “Notice of Discovery” being made until “[ajfter the filing of the charging document.”
Even if the February 27, 2001, filing had been a proper invocation of discovery, the State Attorney’s Office was relieved of any obligation to deliver the documents when Mayor Carollo was allowed to withdraw his request on March 6, 2001.
Post-Newsweek argues that once Mayor Carollo filed his discovery notice, the records were no longer exempt. This would mean that the records would have to be released to the media even before the defendant is entitled to receive them. Further, PosNNewsweek’s argument would make a discovery notice irrevocable and irreversible, but rule 3.220(d)(3) seems to envision the withdrawal of a Notice of Discovery.[3]
Both the language and intent of section 119.07 is to make the right of the defendant to receive documents coextensive with their status as “public records.” As the documents at issue here were never “given to the person arrested,” nor were they required to be given once the discovery request was withdrawn, they retained their exempt status at the time the circuit court issued its writ of mandamus. Thus, the City was improperly ordered to disclose the injury photograph and written statement.
Post-Newsweek also argues that the release of the 911 tape and the incident report had already disclosed the requested information to the public. However, the one-page incident report only contains the responding officer’s brief remark about the *1005 size and location of the injury and one sentence concerning Mrs. Carollo’s allegation that her husband struck her with a hard object. These remarks are a far cry from Mrs. Carollo’s ten page detailed written statement and the close-up photograph of the injury.
Additionally, rule 3.220(a) imposes upon a defendant a reciprocity obligation which should not be circumvented. See Henderson v. State, 745 So.2d 319 (Fla.1999). “The provisions of [section 119.07] are not intended to expand or limit the provisions of [rule] 3.220.” Id. at 321. Therefore, the media should not be granted disclosure before the State Attorney’s Office complies with the defendant’s discovery request, thereby obligating him to reciprocate. To hold otherwise would allow defendants to manipulate the system in order to circumvent reciprocity by requesting discovery, withdrawing the request, and thereafter obtaining the requested information through disclosure to the media.
Reversed.
GODERICH, J., concur.
GREEN, J. (dissenting).
Because I disagree with the majority’s unduly restrictive construction of the Public Records Act, particularly section 119.011(3)(5), Florida Statutes, I respectfully dissent.
The Public Records Act is a legislative creation which provides that:
[i]t is the policy of this state that all state, county, and municipal records shall be open for personal inspection by any person.
§ 119.01(1), Fla. Stat. (1995).[4] The act is to be liberally construed “in favor of ‘open government to the extent possible in order to preserve our basic freedom, without undermining significant governmental function such as crime detection and prosecution.’ ” Tribune Co. v. Public Records, 493 So.2d 480, 482 (Fla. 2d DCA 1986) (quoting Bludworth v. Palm Beach Newspapers, Inc., 476 So.2d 775, 779 (Fla. 4th DCA 1985)). To this end, exemptions from disclosure are to be construed narrowly and limited solely to their stated purposes. See Miami Herald Publ’g Co. v. City of North Miami, 452 So.2d 572, 573 (Fla. 3d DCA 1984). Moreover, “when in doubt the courts should find in favor of disclosure rather than secrecy.” Bludworth, 476 So.2d at 780, n. 1.
Here, section 119.07 provides that “[active criminal intelligence information and active criminal investigative information are exempt from” disclosure under the Public Records Act. § 119.07(3)(b), Fla. Stat. (1998). The limited purpose of this exemption is “to prevent premature disclosure of information when such disclosure could impede an ongoing investigation or allow a suspect to avoid apprehension or escape detection.” Tribune Co. v. Cannella, 438 So.2d 516, 523 (Fla. 2d DCA 1983), rev’d on other grounds, 458 So.2d 1075 (Fla.1984), appeal dismissed, 471 U.S. 1096, 105 S.Ct. 2315, 85 L.Ed.2d 835 (1985). Section 119.011, however, specifically excludes from the exemption criminal investigative information “given or re *1006 quired by law ... to be given to the person arrested”.[5] § 119.011, (3)(5), Fla. Stat. (2000). Clearly, the legislature chose two avenues by which “criminal investigative information” can be released. The first is that such records are actually given to the defendant, whereas the second occurs when the state is required, to give the records to the defendant.[6]
In turn, Florida Rule of Criminal Procedure provides that:
[a]fter the filing of the charging document, a defendant may elect to participate in the discovery process provided by these rules, ..., by filing with the court and serving on the prosecuting attorney a ‘Notice of Discovery’ which shall bind both the prosecution and defendant to all discovery procedures contained in these rules.
Fla. R.Crim. P. 3.220(a) (2000). Once a defendant files this “Notice of Discovery,” within fifteen (15) days “the prosecutor shall serve a written Discovery Exhibit which shall disclose to the defendant and permit the defendant to inspect, copy, test, and photograph” information including witness lists, written or recorded statements, and photographs.[7] See Fla. R.Crim. P. 3.220(b).
*1007 In this case, Carollo’s counsel entered his written appearance, a not-guilty plea, and a request for additional time to file defensive motions on the same day that he filed his Notice of Discovery pursuant to rule 3.220(a). Given the unequivocal language of section 119.011, I believe that the trial court correctly concluded that Carol-lo’s Discovery Notice triggered the State’s obligation to provide these materials to Post-Newsweek. See State v. Meggison, 556 So.2d 816 (Fla. 5th DCA 1990) (once a criminal defendant makes a written demand for discovery the state is required, under Florida Rule of Criminal Procedure 3.220(a), to disclose information the State would otherwise not be required to disclose).
To rule, as the majority suggests, that such material is not available until it is actually given to the defendant, obviates the “required to be given” portion of the rule. The legislature clearly stated that items “given to the person arrested or required by law ... to be given” are exempt from the public records exclusion. The legislature’s connection of these two available avenues with the disjuctive “or,” makes clear that the legislature intended that either scenario should result in such information being available fqr public inspection. See Henderson v. State, 745 So.2d 319, 326 (Fla.1999)(finding that the legislature is presumed not to enact purposeless and/or useless legislation). See also Aetna Cas. & Surety Co. v. Huntington Nat’l Bank, 609 So.2d 1315, 1317 (stating that “[i]t must be assumed that the legislature knows the meaning of the words and has expressed its intent by the use of the words found in the statute”). Moreover, the purpose of the “criminal investigative information” exemption was not undermined by the public release of this information. None of the information given to PosNNewsweek would (or could) “impede an ongoing investigation” in this domestic relations dispute. See Camella, 438 So.2d at 523. Nor would the release of this information allow Carollo, the former Mayor of the City of Miami, to avoid “apprehension or escape detention.” Id. Accordingly, the trial court properly applied a liberal interpretation to section 119.011 and correctly concluded that Car-olio’s Notice of Discovery triggered the State’s obligation to produce all materials in its custody, including Mrs. Carollo’s injury photo and statement.
In addition, I doubt whether the “criminal investigative information” exemption even applies to this case. Most of the information regarding Carollo’s arrest and the underlying incident, became known to the public through the media almost immediately. The police were quick to release the arrest report and the 911 tape. News organizations published their content, and both Carollo and his estranged wife readily shared their respective versions of the *1008 events to anyone who would listen. Once this information was made public, the exemption did not apply and access should have been given to Post-Newsweek. See Staton v. McMillan, 597 So.2d 940, 941 (Fla. 1st DCA 1992)(the criminal investigative information exemption does not apply to information which has previously been made public); Downs v. Austin, 522 So.2d 931, 935 (Fla. 1st DCA 1988)(stating that “once the State has gone public with information which could have previously been protected from disclosure ..., no further purpose is served by preventing full access to the desired documents or information.”), citing Bludworth v. Palm Beach Newspapers, Inc., 476 So.2d 775 (Fla. 4th DCA 1985) and Satz v. Blankenship, 407 So.2d 396, 398 (Fla. 4th DCA 1981).
Through either analysis, I believe that mandamus was proper and that the trial court’s order should be affirmed.[8]

ON MOTION FOR REHEARING, REHEARING EN BANC, AND/OR CERTIFICATION

PER CURIAM.
We deny the motion for rehearing but certify the following question to the Florida Supreme Court as of great public importance:
When a criminal defendant files a written request for discovery pursuant to Florida Rule of Criminal Procedure 3.220 and subsequently withdraws that request before the State responds to the request and before the expiration of the 15 days prescribed in rule 3.220(b), are the materials and documents so requested subject to a Public Record request or do they retain their exempt status under section 119.07, Florida Statutes (2000), as active criminal investigative information?
Motion denied. Question certified.

. Although Post-Newsweek has already received the injury photograph and Mrs. Carol-lo's statement, the case is not moot because the issue is capable of repetition, yet evading review. See Roesch v. State, 633 So.2d 1, 2 n. 1 (Fla.1993); Craig v. State, 804 So.2d 532, (Fla. 3d DCA 2002).

. We are concerned that the circuit court judge issued the writ when there was a motion pending before the county court for release of these same materials. Although there is no rule or statute to prevent the circuit court from exercising jurisdiction, it would seem better form to allow the criminal court judge to be the first to visit the issue, as that is where the charges would ultimately be tried and the criminal court judge would be in a better position to determine whether any criminal investigation or prosecution would be compromised by the publication of these materials.

. Rule 3.220(d)(3), Florida Rules of Criminal Procedure, provides as follows:
The filing of a motion for protective order by the prosecutor will automatically sthy the times provided for in this subdivision. If a protective order is granted, the defendant may, within 2 days thereafter, or at any time before the prosecutor furnishes the information or material that is the subject of the motion for protective order, withdraw the defendant’s notice of discovery and not be required to furnish reciprocal discovery. [emphasis added].

. A public record is “any material prepared in connection with official agency business which is intended to perpetuate, communicate or formalize knowledge of some type.” Shevin v. Byron, Harless, Schaffer, Reid & Assoc., Inc., 379 So.2d 633, 640 (Fla.1980). See also § 119.011(1), Fla. Stat. (1996)(“ 'Public Records' means all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or Other material regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.”).

. The “agency rule” language of the statute is irrelevant to this case.

. The terms “require” means: “[t]o direct, order, demand, instruct, command, request, need, exact.” Black's Law Dictionary 1304 (6th ed.1990). See also, e.g., Webster’s Ninth New Collegiate Dictionary 1002 (1991) (require means "to impose a compulsion or command one”); Webster’s Encyclopedia Unabridged Dictionary 1219 (1996) (require means "to place under an obligation or necessity”); American Heritage Dictionary 1050 (2d Coll.3d 1982) (require means “to impose an obligation on”).

. Specifically, the rule provides a defendant access to:
(A)a list of the names and addresses of all persons known to the prosecutor to have information that may be relevant to any offense charged or any defense thereto, or to any similar fact evidence to be presented at trial under section 90.404(2), Florida Statutes. The names and addresses of persons listed shall be clearly designated in the following categories:
(i)Category A. These witnesses shall include (1) eye witnesses, (2) alibi witnesses and rebuttal to alibi witnesses, (3) witnesses who were present when a recorded or unrecorded statement was taken from or made by a defendant or codefendant, which shall be separately identified within this category, (4) investigating officers, (5) witnesses known by the prosecutor to have any material information that tends to negate the guilt of the defendant as to any offense charged, (6) child hearsay witnesses, and (7) expert witnesses who have not provided a written report and a curriculum vitae or who are going to testify to test results or give opinions that will have to meet the test set forth in Frye v. United States, 293 F. 1013 (D.C.Cir.1923).
(ii) Category B. All witnesses not listed in either Category A or Category C.
(iii) Category C. All witnesses who performed only ministerial functions or whom the prosecutor does not intend to call at trial and whose involvement with and knowledge of the case is fully set out in a police report or other statement furnished to the defense;
(B) the statement of any person whose name is furnished in compliance with the preceding subdivision. The term 'statement' as used herein includes a written statement made by the person and signed or otherwise adopted or approved by the person and also includes any statement of any kind or manner made by the person and written or recorded or summarized in any writing or recording. The term 'statement' is specifically intended to include all police and investigative reports of any kind prepared for or in connection with the case, but shall not include the notes from which those reports are compiled;
(C) any written or recorded statements and the substance of any oral statements made by the defendant, including a copy of any statements contained in police reports or report summaries, together with the name and address of each witness to the statements;
(D) any written or recorded statements and the substance of any oral statements made by a codefendant if the trial is to be a joint one;
*1007 (E) those portions of recorded grand jury minutes that contain testimony of the defendant;
(F) any tangible papers or objects that were obtained from or belonged to the defendant;
(G) whether the state has any material or information that has been provided by a confidential informant;
(H) whether there has been any electronic surveillance, including wiretapping, of the premises of the defendant or of conversations to which the defendant was a party and any documents relating thereto;
(I) whether there has been any search or seizure and any documents relating thereto;
(J) reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons; and
(K) any tangible papers or objects that the prosecuting attorney intends to use in the hearing or trial and that were not obtained from or that did not belong to the defendant. Fla.R.Crim.P. 3.220(b).

. See Combs v. State, 436 So.2d 93, 96 (Fla.1983) (where trial court reached right result albeit for wrong reasons, affirmance is proper); Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979) (a conclusion of trial court will generally be affirmed if alternative theory supports it).