463 So.2d 224 (1985)
STATE of Florida ex rel. Orneta M. QUIGLEY, Petitioner,
v.
James Webster QUIGLEY, Respondent.
No. 65192.
Supreme Court of Florida.
January 31, 1985.
*225 Jim Smith, Atty. Gen., and James A. Peters, Asst. Atty. Gen., Tallahassee, for petitioner.
Robert L. Donald and William C. Merchant of Pavese, Shields, Garner, Haverfield, Dalton & Harrison, Fort Myers, for respondent.
McDONALD, Justice.
We have for review State ex rel. Quigley v. Quigley, 446 So.2d 1174 (Fla. 2d DCA 1984), which is in express and direct conflict with Helmick v. Helmick, 436 So.2d 1122 (Fla. 5th DCA 1983). We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and quash Quigley.
Orneta Quigley filed a petition in Michigan to initiate support proceedings under the Uniform Reciprocal Enforcement of Support Act (URESA) to enforce a 1978 alimony order entered in Michigan in her favor against her ex-husband, James Webster Quigley. In November 1982 a Michigan circuit court certified that the petition set forth facts from which it could be determined that Mr. Quigley owes the duty of support of alimony and that the circuit court in Lee County, Florida could obtain jurisdiction over this issue. The state of Florida, functioning as the responding jurisdiction, processed the petition and served it upon Mr. Quigley.
In defense of the petition Mr. Quigley filed a motion to dismiss, contending that Florida's revised URESA, chapter 88, Florida Statutes (1981), only provides remedies for arrearages of child support and does not include alimony. After a hearing on the motion, the circuit court entered an order of dismissal on the basis that actions which are pure alimony in nature are not enforceable through URESA proceedings. On appeal the Second District Court of Appeal affirmed the trial court's dismissal and construed the statement of legislative intent in section 88.012 to deny Florida courts subject matter jurisdiction to enforce an alimony provision of an out-of-state divorce judgment. The court acknowledged that its decision conflicts with *226 Helmick, which enforced an alimony judgment through URESA.
At issue in this case is the intended effect of the 1979 amendments to Florida's URESA. Florida adopted the original Uniform Reciprocal Enforcement of Support, Act in 1955. Ch. 29901, Laws of Fla. (1955). Chapter 79-383, Laws of Florida, revised chapter 88 so that Florida's URESA would comport with the 1968 version of the Reciprocal Enforcement of Support Act as drafted by the National Conference of Commissioners of Uniform State Laws. In addition to the numerous amendments necessary to conform chapter 88 to the revised version of URESA, the legislature also inserted section 88.012 entitled "Legislative intent." This section declares that it is the "public policy of this state that this act shall be construed and administered to the end that children residing in this or some other state shall be maintained from the resources of responsible parents, whether the responsible parents live in this or some other state." Several references are made to child support, but the word "alimony" does not appear in this section.
Mr. Quigley reasons that, because section 88.012 mentions only child support, it must have been the legislature's intent to limit the scope of the term "support," which is found in the subsequent sections of the URESA, to support for a dependent child and not a former spouse. The second district adopted the position of Mr. Quigley. Although we acknowledge the logic of Mr. Quigley's reasoning, we do not see that the legislature intended to exclude orders of alimony support from the scope of Florida's URESA.
Chapter 88 had been construed to include both alimony and child support prior to enactment of the 1979 amendments. Thompson v. Thompson, 93 So.2d 90 (Fla. 1957); Cox v. State, 180 So.2d 467 (Fla. 3d DCA 1965); Clark v. Clark, 139 So.2d 195 (Fla. 2d DCA 1962); 1977 Op. Att'y Gen. Fla. 077-77 (July 26, 1977). The legislature is presumed to be cognizant of the judicial construction of a statute when contemplating making changes in the statute, Seddon v. Harpster, 403 So.2d 409 (Fla. 1981), and the changes made to chapter 88 do not evince an intent to exclude alimony from the meaning of the word "support" as it is used throughout the statute. In fact the amended URESA defines "support order" to mean

any judgment, decree, or order of support in favor of a petitioner, whether temporary or final or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered.
§ 88.031(19), Fla. Stat. (1981) (emphasis added). If the legislature had meant to distinguish between child support and alimony, it should have redefined this term, especially in light of the previous application of URESA to alimony awards.
We cannot find that the statement of legislative intent impliedly meant to repeal alimony support actions previously available under URESA. It is well established that amendment by implication is not favored and will not be upheld in doubtful cases. State v. J.R.M., 388 So.2d 1227 (Fla. 1980); Miami Water Works Local No. 654 v. City of Miami, 157 Fla. 445, 26 So.2d 194 (1946). A better explanation for the injection of section 88.012 into Florida's URESA is that the legislature wished to give recognition to the additional remedies available under the Aid to Families with Dependent Children Program (AFDC) in chapter 409, Florida Statutes, implemented in 1976. Ch. 76-220, Laws of Fla. The statement of legislative intent clarifies the fact that the remedies for child support under URESA are "augmented by the additional remedies directed to the resources of the responsible parents as mandated by the Florida IV-D program in chapter 409." § 88.012, Fla. Stat. (1981).
Further support for the inclusion of alimony within Florida's URESA is found in the nature of the statute itself. It is intended to be enforced both uniformly and *227 reciprocally throughout the various states. §§ 88.311, 88.021, Fla. Stat. (1981). The courts of other jurisdictions have construed the act to include support for spouses. E.g., Ex Parte O'Neill, 420 So.2d 264 (Ala. 1982); Mehrstein v. Mehrstein, 245 Cal. App.2d 646, 54 Cal. Rptr. 65 (2d DCA 1966); Henry v. Henry, 115 Ga. App. 211, 154 S.E.2d 298 (1967); Mullis v. Mullis, 669 P.2d 763 (Okla. 1983); Alig v. Alig, 220 Va. 80, 255 S.E.2d 494 (1979). If Florida does not qualify as a reciprocating state in other jurisdictions, Florida citizens will not be able to look to those states for the enforcement through URESA of support orders entered by Florida courts. Thus, as a matter of judicial and public policy, Florida courts should enforce a foreign judgment of alimony under URESA.
In holding that a Florida court may enforce a foreign judgment of alimony under URESA, we do not mean to imply that the extraordinary remedy available under URESA should be extended to all foreign alimony judgments. The issuing state must certify that the alimony judgment is for the support of the spouse. Awards of alimony which constitute part of a property settlement should not be enforced through URESA.[*]
Since the URESA petition in this case certifies that the alimony award was a support order, we quash the decision of the district court which affirmed the dismissal of Mrs. Quigley's petition for lack of subject matter jurisdiction. We direct the district court to remand this case to the circuit court for further proceedings consistent with this opinion.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, EHRLICH and SHAW, JJ., concur.
NOTES
[*] Foreign alimony awards which constitute part of a property settlement must be enforced like any other foreign judgment in Florida. Ch. 84-5, Laws of Fla., provides that foreign judgments may be domesticated by simply recording them in the office of the clerk of the circuit court of any county.