668 So.2d 989 (1996)
Margaret L. NICOLL, Petitioner,
v.
Franklin G. BAKER, Circuit Judge, etc., and Frank S. Nicoll, Jr., Respondents.
No. 85493.
Supreme Court of Florida.
February 29, 1996.
Owen L. Luckey, Jr., LaBelle, for Petitioner.
Frank C. Alderman, III, of Alderman & Ahlbrand, P.A., Fort Myers; and John Jay Watkins of Watkins & Ramunni, P.A., LaBelle, and Gerald W. Pierce of Henderson, Franklin, Starnes & Holt, P.A., Fort Myers, on behalf of Frank S. Nicoll, Jr., for Respondents.
SHAW, Justice.
We have for review Nicoll v. Baker, 652 So.2d 417 (Fla. 2d DCA 1995), wherein the district court certified the following question:
Whether the legislature, by enacting section 88.031(20), Florida Statutes (1993), has abrogated the Supreme Court's holding in State ex rel. Quigley v. Quigley, 463 So.2d 224 (Fla.1985), and removed alimony orders from the jurisdiction of URESA unless they are accompanied by child support?
Nicoll, 652 So.2d at 419. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the affirmative and approve Nicoll.
The Nicolls were divorced in Maryland in 1965. Nearly thirty years later, in 1994, the wife filed a petition in circuit court in Hendry County, Florida, under the Uniform Reciprocal Enforcement of Support Act (URESA)[1] to collect $1.9 million in unpaid alimony. The husband filed a motion to dismiss, claiming that Florida's version of URESA is limited to the enforcement of child support obligations and is inapplicable to claims involving only alimony.
*990 The court determined that the claim was cognizable under URESA, and the husband petitioned the district court for a writ of prohibition barring the circuit court from proceeding. The district court granted the writ, reasoning that although this Court held in State ex rel. Quigley v. Quigley, 463 So.2d 224 (Fla.1985), that alimony awards standing alone can be enforced under URESA, the legislature via a 1992 amendment has since defined "support" to exclude such awards. The court certified the above question.
The wife argues that when the 1992 amendment is viewed in its entirety it is clear the legislature did not remove alimony from URESA's purview. The public policy underlying Quigley, she claims, still controls. We disagree.
The legislature adopted the original Uniform Reciprocal Enforcement of Support Act in 1955 and amended it in 1979 to make it consistent with the 1968 version of the Reciprocal Enforcement of Support Act passed by the National Conference of Commissioners of Uniform State Laws. See ch. 79-383, Laws of Fla; ch. 29901, Laws of Fla. (1955). The 1979 amendment included a section entitled "Legislative intent," which provided in part:
It is declared to be the public policy of this state that this act shall be construed and administered to the end that children residing in this or some other state shall be maintained from the resources of responsible parents, whether the responsible parents live in this or some other state, thereby relieving, at least in part, the burden borne by the custodial parent or the general citizenry through public assistance programs.
Ch. 79-383, § 2, at 1912, Laws of Fla.
The above language played a key role in State ex rel. Quigley v. Quigley, 463 So.2d 224 (Fla.1985). Orneta Quigley filed a petition under URESA in circuit court in Michigan to enforce a Michigan alimony order against her former husband, who was residing in Lee County, Florida. After the State of Florida, as the responding jurisdiction, processed and served the petition on Mr. Quigley, the circuit court in Lee County dismissed the petition, ruling that pure alimony orders are unenforceable under Florida's URESA. The district court affirmed based on the above statement of "Legislative intent," which did not mention alimony.
This Court recognized the logic of the district court's reasoning but declined to read so much into the 1979 amendment. We quashed the decision for two reasons: 1) Florida case law had included alimony awards within URESA's purview for years, and 2) the broad definition of "support order" in section 88.031(19) referred to "any" order of support:
(19) "Support order" means any judgment, decree, or order of support in favor of a petitioner, whether temporary or final or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered.
§ 88.031, Fla.Stat. (1985). We reasoned as follows:
If the legislature had meant to distinguish between child support and alimony [in the 1979 amendment], it should have redefined this term, especially in light of the previous application of URESA to alimony awards.
Quigley, 463 So.2d at 226. Seven years after Quigley, the legislature apparently did just that.
The legislature in 1992 amended the definitions in section 88.031 to include the term "support" immediately following the above definition of "support order," and the new definition conspicuously fails to include alimony obligations standing alone:
(20) "Support" includes:
(a) Support for a child, or child and spouse, or former spouse who is living with the child or children, but only if a support obligation has been established for that spouse and the child support obligation is being enforced under Title IV-D of the Social Security Act; or
(b) Support for a child who is placed under the custody of someone other than the parent pursuant to s. 39.41.
§ 88.031, Fla.Stat. (1993).
A basic rule of law controls: When the words of a statute are plain and unambiguous and convey a definite meaning, courts *991 have no occasion to resort to rules of construction they must read the statute as written, for to do otherwise would constitute an abrogation of legislative power. Holly v. Auld, 450 So.2d 217 (Fla.1984). Further, we must presume that when the legislature amended the statute in 1992 it knew of our ruling in Quigley: "The legislature is presumed to be cognizant of the judicial construction of a statute when contemplating making changes in the statute...." Quigley, 463 So.2d at 226.
Thus, our holding in Quigley has been superseded by the 1992 amendment. Alimony obligations standing alone are no longer enforceable under Florida's version of URESA.
Based on the foregoing, we answer the certified question in the affirmative and approve Nicoll.
It is so ordered.
GRIMES, C.J., and KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
OVERTON, J., concurs with an opinion, in which GRIMES, C.J., concurs.
OVERTON, Justice, concurring.
I regrettably must agree with the majority that actions seeking only to enforce alimony awards under Florida's Uniform Reciprocal Enforcement of Support Act (URESA) are no longer allowed under the present statutory provisions. This change is the result of amendments made in 1992 to URESA by the Florida Legislature. The 1992 amendments create a new minimum threshold. An action to enforce a child-support order must be an integral part of any claim proceeding under URESA. The majority opinion does not directly address whether URESA may still be invoked to enforce an alimony-support order if such an action is filed in conjunction with a petition to enforce a child-support order. The district court opinion, however, clearly envisions that a dual action is still justiciable under URESA.
I write only to suggest that the legislature should reexamine these URESA amendments and make clear whether it truly intended to prohibit actions seeking only to enforce alimony orders. Instead of reducing the amount of domestic litigation, today's statutory construction will increase the number of individual claims filed. Instead of smoothing the path to an efficient and just resolution of domestic matters, today's statutory construction could result in the inconvenient filing of multiple actions, in separate states, between the same parties.
In my view, this type of multiple litigation does not conform to the original purpose of URESA.
GRIMES, C.J., concurs.
NOTES
[1] Ch. 88, Fla.Stat. (1993).