# Third District Court of Appeal

## State of Florida

Opinion filed October 24, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1556
Lower Tribunal No. 10-10696B
_____

**M.G.,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Milton Hirsch, Judge.

Weil, Gotshal & Manges LLP, and Edward Soto and Lauren Alexander, for appellant.

Pamela Jo Bondi, Attorney General, and Nikole Hiciano and Marlon J. Weiss, Assistant Attorneys General, for appellee.

Before SUAREZ, EMAS and FERNANDEZ, JJ.

EMAS, J.

M.G., a human trafficking victim, appeals from an order denying a petition to expunge her criminal history record, filed pursuant to section 943.0583, Florida Statutes (2017) ("the Human Trafficking Victim Expunction Statute"). We affirm because, while that statute generally permits the trial court to exercise its discretion in ordering the expunction of criminal history records of human trafficking victims, the trial court correctly determined that the plain language of the statute excludes expunction of criminal history records related to the offense of kidnapping.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts appear to be undisputed for our purposes: For several years, M.G. lived under the control of a human trafficker, Alexander Valdes ("Valdes"). While under his control, M.G. was arrested on three separate occasions for offenses committed as part of a human trafficking scheme. The last occasion was in 2010, when M.G. was arrested and formally charged with *inter alia*, kidnapping, sex trafficking, and deriving support from the proceeds of prostitution.

M.G later entered into a negotiated plea agreement, which included her cooperation with the State and her agreement to testify against Valdes. M.G. pleaded guilty to sex trafficking, conspiracy to commit sex trafficking, and deriving support from the proceeds of prostitution. As a part of the negotiated

2

plea, the State nolle prossed the kidnapping charge. After serving her sentence, M.G. petitioned the trial court to vacate and expunge all criminal history records pursuant to the Human Trafficking Victim Expunction Statute, which permits a trial court in its discretion to expunge the criminal history records of human trafficking victims under certain circumstances.

The evidence at the hearing revealed that M.G. became a victim of human trafficking in 2007. M.G.'s abusive and controlling boyfriend at the time, Francisco Cruz ("Cruz"), convinced her to make adult films in order to earn more money, as they were both financially unstable. After Cruz started working for Valdes as a driver for his escort business, Cruz made M.G. join him while driving to pick up women and take them to calls with men, allegedly as part of the scheme to get M.G. accustomed to the business and "groomed" into being sold. Valdes subsequently convinced M.G. that she could make a lot of money working for him—a technique referred to as the "honeymoon" phase—where, as M.G. described it, Valdes sold her "a dream, which was really a nightmare consisting of violence, beatings, abuse, humiliation, and victimization."

M.G. became Valdes' "bottom bitch."[1] She was required—among other things—to always praise him in front of other women, to recruit other women to

_____

[1] M.G. was required to wear a necklace that said "bottom bitch." In her testimony, M.G. described a "bottom bitch" as "the woman that is with the pimp the longest and it appears that ["bottom bitches"] have more privileges but really there is more rules and we have to uphold his image and make sure that he's seen well in front of

3

work for Valdes, and to give all of her money from her forced sexual encounters to him. M.G. was forbidden to look at other men in the eye, could not have any friends, and all of her activities and interactions were controlled. If she broke any of these rules, Valdes would beat her in front of the other women. He also forced M.G. to take drugs and medications "in order to remain compliant with his demands." "He drugged [M.G.] into submission in order to sell [her] to make money." M.G. was required to have sex with five to ten men per day in order to meet Valdes' daily quota of earning him $1000.

In early 2010, M.G. went in the car with Valdes to purchase marijuana at a shoe repair shop in North Miami Beach. When he returned to the car after making his purchase, he had another woman with him, K.D., who he found in an alley next to the store. Valdes forced M.G. to befriend K.D and to convince K.D. to work with Valdes. If M.G. did not comply, she would be beaten. M.G. complied, and K.D. ultimately worked for Valdes for about a month.

During her time working for Valdes, K.D.'s father put out missing person flyers. One night, K.D. escaped from the hotel where she was working, returned to her father, and told him that Valdes and M.G. kidnapped her and forced her into prostitution. When Valdes and M.G. went out looking for K.D., they were arrested and charged with several offenses, including sex trafficking and kidnapping.

---

other women."

After their arrest, Valdes was still manipulating M.G. from jail, and convinced her to not provide the authorities any information about their activities. It was not until Valdes forged a letter to M.G.'s attorney, firing her attorney, that M.G. started speaking to the State Attorney's Office. She was still afraid to give specific details for fear of Valdes' vengeance, but over time she was able to share more and more information about her victimization.

Further, although M.G. did work in the restaurant industry following her victimization, when she applied to school to obtain a degree in culinary arts, she was not able to enroll because of her felony record.

Following the hearing, the trial court granted M.G.'s petition with one exception: the trial court denied the petition to expunge those criminal history records related to the kidnapping charge. In the order, the trial court reasoned that it was without discretion to order the expunction of those records, as the offense of kidnapping is excluded from expunction under the Human Trafficking Victim Expunction Statute. This appeal followed.

**STANDARD OF REVIEW**

The decision to grant or deny a petition to expunge criminal history records is generally reviewed for an abuse of discretion. See § 943.0583(2), Fla. Stat. (2017). However, to the extent such decisions are based upon questions of

5

statutory interpretation, our standard of review is de novo.  Kasischke v. State, 991

So. 2d 803, 807 (Fla. 2008).


**DISCUSSION**

The Human Trafficking Victim Expunction Statute, section 943.0583(3),

provides:

> A person who is a victim of human trafficking may petition for the
> expunction of a criminal history record resulting from the arrest or
> filing of charges for an offense committed or reported to have been
> committed while the person was a victim of human trafficking, which
> offense was committed or reported to have been committed as a part
> of the human trafficking scheme of which the person was a victim or
> at the direction of an operator of the scheme, including, but not
> limited to, violations under chapters 796 and 847, without regard to
> the disposition of the arrest or of any charges. **However, this section
> does not apply to any offense listed in s. 775.084(1)(b)1.**
> Determination of the petition under this section should be by a
> preponderance of the evidence. A conviction expunged under this
> section is deemed to have been vacated due to a substantive defect in
> the underlying criminal proceedings.

(Emphasis added.)[2]

Subsection 775.084(1)(b)1., Florida Statutes (2017), provides for an

extended term of imprisonment for a defendant who qualifies as a habitual violent

felony offender:

---

[2] Further, the Human Trafficking Victim Expunction Statute "does not confer any
right to the expunction of a criminal history record, and any request for expunction
of a criminal history record may be denied at the discretion of the court." §
943.0583(2), Fla. Stat. (2017).

6

(b) "Habitual violent felony offender" means a defendant for whom the court may impose an extended term of imprisonment, as provided in paragraph (4)(b), if it finds that:

1. The defendant has previously been convicted of a felony or an attempt or conspiracy to commit a felony and one or more of such convictions was for:

    a. Arson:
    b. Sexual battery;
    c. Robbery;
    d**. Kidnapping;**
    e. Aggravated child abuse;
    f. Aggravated abuse of an elderly person or disabled adult;
    g. Aggravated assault with a deadly weapon;
    h. Murder;
    i. Manslaughter;
    j. Aggravated manslaughter of an elderly person or disabled adult;
    k. Aggravated manslaughter of a child;
    l. Unlawful throwing, placing, or discharging of a destructive device or bomb;
    m. Armed burglary;
    n. Aggravated battery; or
    o. Aggravated stalking.

(Emphasis added). It is this list of enumerated offenses which the legislature relied upon in creating the exclusion provision in section 943.0583(3) of the Human Trafficking Victim Expunction Statute.

We agree with the trial court's conclusion that section 943.0583(3) admits of no ambiguity, and its plain language precluded the trial court from exercising its discretion to grant expunction of M.G.'s criminal history records related to the offense of kidnapping. "The cardinal rule of statutory construction is 'that a statute

7

should be construed so as to ascertain and give effect to the intention of the Legislature as expressed in the statute.'" City of Tampa v. Thatcher Glass Corp., 445 So. 2d 578, 579 (Fla. 1984) (quoting Deltona Corp. v. Florida Public Service Comm'n, 220 So. 2d 905 (Fla. 1969)). "Legislative intent is the polestar by which the court must be guided, and this intent must be given effect even though it may contradict the strict letter of the statute." State v. Webb, 398 So. 2d 820, 824 (Fla. 1981).

In construing a statutory provision, a court must "first look to the actual language used in the statute." Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005). "It is a fundamental principle of statutory construction that where the language of a statue is plain and unambiguous there is no occasion for judicial interpretation." Pardo v. State, 596 So. 2d 665, 667 (Fla. 1992).

M.G. contends that the exclusion set forth in section 943.0583(3) applies only if the petitioner was convicted of an offense listed in section 775.084(1)(b)1., and, because M.G. was charged but never convicted of a kidnapping offense, the exclusion is inapplicable and the trial court had the discretion to grant expunction of those criminal history records. We do not agree. The plain language of section 943.0583(3) provides that "this section **does not apply to any offense listed** in s. 775.084(1)(b)1." (Emphasis added). We hold that this language unambiguously refers to the list of offenses set forth in section 775.084(1)(b)1., and does not

8

require that the petitioner be convicted of such offense. It is true that, in defining whether a defendant qualifies as a "habitual violent felony offender," that subsection requires that a defendant be <u>convicted</u> of one of the listed offenses. However, the requirement of a conviction in section 775.084(1)(b)1. is relevant only to determining whether a defendant qualifies as a habitual violent felony offender, and is wholly inapplicable to the Human Trafficking Victim Expunction Statute and the incorporated list of offenses.[3]

This is further supported by considering the remaining portions of section 943.0583(3):

> A person who is a victim of human trafficking may petition for the expunction of a criminal history record **resulting from the arrest or filing of charges** for an offense committed or reported to have been committed while the person was a victim of human trafficking, which offense was committed or reported to have been committed as a part of the human trafficking scheme of which the person was a victim or at the direction of an operator of the scheme, including, but not limited to, violations under chapters 796 and 847, **without regard to the disposition of the arrest or of any charges.**

(Emphasis added.)

As can be seen, the Human Trafficking Victim Expunction Statute addresses expunction "of a criminal history record resulting from the arrest or filing of

---

[3] Indeed, accepting M.G.'s proposed construction of the statute would require engrafting not only the "conviction" requirement, but that entire phrase in section 775.084(1)(b)1.—meaning that the exclusion would apply (and expunction not permitted) only if the "defendant has previously been convicted" of one of the listed offenses.

charges . . . without regard to the disposition of the arrest or of any charges." Surely, if the legislature intended to limit the exclusion to <u>convictions</u> for "any offense listed in s. 775.084(1)(b)1.," it could have and would have said so. <u>See</u> <u>State v. Chubbuck</u>, 141 So. 3d 1163, 1171 (Fla. 2014); <u>Hopkins v. State</u>, 105 So. 3d 470, 474 (Fla. 2012); <u>Gering v. State</u>, 43 Fla. L. Weekly D1642 (Fla. 3d DCA July 25, 2018).

Finally, M.G. contends that her proposed construction of the exclusionary language of section 943.0583(3) is consistent with the underlying intent of the legislature—to afford victims of human trafficking as much relief as the law allows. <u>See</u> H.B. 1327, 2013 Leg., Reg. Sess. (Fla. 2013)("Persons who are victims of human trafficking and who have been convicted of crimes committed at the behest of their traffickers . . . face barriers to . . . life opportunities as long as these criminal convictions remain on their record . . . .  [They should] have the chance to rebuild their lives and reenter society.")

We cannot deny that permitting expunction of all of M.G.'s criminal history records in this case would be consistent with the above-described legislative intent. However, given the clear and unambiguous language of the statute, resort to legislative intent is neither necessary nor permissible. <u>See, e.g.</u>, <u>Daniels v. Florida</u> <u>Dep't of Health</u>, 898 So. 2d 61, 64 (Fla. 2005) (observing: "When the statute is clear and unambiguous, courts will not look behind the statute's plain language for

legislative intent or resort to rules of statutory construction to ascertain intent.") Under the present circumstances, "courts have no occasion to resort to rules of construction—they must read the statute as written, for to do otherwise would constitute an abrogation of legislative power." Nicoll v. Baker, 668 So. 2d 989, 990-91 (Fla. 1996). While we can certainly sympathize with M.G.'s tragic circumstances and admire her determination in overcoming them, we cannot substitute our judgment for that of the legislature. The construction of the statute as urged by M.G. must be the result of legislative amendment, not judicial pronouncement.

## CONCLUSION

We agree with the trial court's determination that no ambiguity exists, and that expunction of criminal history records related to the offense of kidnapping is precluded by the plain language of the statute. We find no merit in the other argument raised by appellant.[4]

Affirmed.

---

[4] See State v. Ford, 626 So. 2d 1338, 1345 (Fla. 1993) (observing: "All courts in Florida possess the inherent powers to do all things that are reasonable and necessary for the administration of justice within the scope of their jurisdiction, **subject to valid existing laws** and constitutional provisions")(emphasis added and additional citations omitted).