# Third District Court of Appeal

## State of Florida

Opinion filed December 16, 2020.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-2224
Lower Tribunal No. 19-32548
_____

**City of Miami Beach, etc.,**
Appellant,

vs.

**Miami New Times, LLC,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Maria de Jesus Santovenia, Judge.

Raul J. Aguila, Miami Beach City Attorney, and Mark A. Fishman, Senior Assistant City Attorney, and Faroat Andasheva, Assistant City Attorney I, for appellant.

Julianne Hill, for appellee.

Before EMAS, C.J., and HENDON and GORDO, JJ.

PER CURIAM.

## INTRODUCTION

The City of Miami Beach seeks review of the trial court's order granting a petition for writ of mandamus, directing the City to provide to Miami New Times copies of draft audit reports pertaining to two Miami Beach towing companies. We quash the order on appeal because, under the plain and unambiguous statutory language of section 119.0713(2)(b), Florida Statutes (2019), the draft audit reports were not public records subject to disclosure.

## FACTUAL BACKGROUND

In December 2018, the Internal Auditor for the City of Miami Beach commenced an internal audit of two Miami Beach towing companies. During the auditing process, the City Auditor met with representatives of the towing companies to discuss the draft audit reports. The City also provided copies of these draft reports to the towing companies' attorney. These audit reports were not final and had not been presented to the City Commission or other city governmental body. They were provided to the towing companies' representatives as part of the City's "customary business practice" for completion of an internal audit, i.e., to permit the auditees (here, the towing companies) an opportunity to review, comment upon, and provide input prior to preparation of a final audit report.

During the pendency of the internal audit, Miami New Times requested from the City a copy of these draft audit reports. The City responded that the audit was

still in progress and the draft reports were not final and were not subject to public disclosure. The City estimated that the audit and the reports would not be final for at least another month while the City Auditor met with the towing companies to complete their review of the draft reports, to solicit comments and feedback, and to make appropriate revisions.

Shortly thereafter, and prior to completion of the internal audit, the towing companies' representatives appeared before the City Commission and requested commencing a new, external audit conducted by an independent auditing firm. The towing companies expressed their concern that the internal audit was conducted in an unfair and unethical manner. After discussing the matter, the City Commission voted to terminate the City's internal audit and hired an independent company to undertake a new external audit. The draft audit reports were never finalized, nor were they signed by the City Manager or presented to the City Commission.

Following termination of the City's internal audit, Miami New Times again requested a copy of the draft audit reports. The City again denied the request, based on section 119.0713(2)(b), Florida Statutes (2019), providing that an audit report and audit workpapers become a public record subject to disclosure only when the audit is "complete and the audit report becomes final." The City maintained that the internal City audit was never completed, the draft audit reports never became final, and, therefore, the reports were not subject to disclosure as public records.

At about the same time (and unbeknownst to the City), counsel for the towing companies shared the draft audit reports with a reporter from a local online news agency. The reporter published an article discussing the draft audit reports. Miami New Times renewed its request to the City, asserting that, because there was "no reasonable anticipation of resolution of the city's audit," the exemption under section 119.0713(2)(b) did not apply, and the draft audit reports were subject to disclosure. The City again denied the request, advising that because the internal audit had not been completed and the draft audit reports were not final, they were not subject to disclosure as public records.

Miami New Times petitioned for writ of mandamus, contending that the City improperly relied on section 119.0713(2)(b) in denying the request for a copy of the draft audit reports because the City investigation had been terminated and therefore the reports were no longer exempt from disclosure as public records. Miami New Times alternatively contended that if a statutory exemption applied, that exemption was waived when the towing companies disclosed the draft audit reports to a third party.

Following a hearing, the trial court determined that, even if the draft audit reports were exempt from disclosure under section 119.0713(2)(b), any entitlement to that exemption ceased to exist once those draft reports, provided by the City to the auditee towing companies, were disclosed by the towing companies (and without

4

the City's knowledge) to a third party. We conclude the trial court erred, and hold that, under the plain language of the statute, the draft audit reports were not public records subject to disclosure, and did not become subject to disclosure when the towing companies disclosed them to a third party.[1]

**DISCUSSION AND ANALYSIS**

The determination of what constitutes a public record is a question of law that we review de novo. State v. City of Clearwater, 863 So. 2d 149, 151 (Fla. 2003). Article I, section 24(a) of the Florida Constitution guarantees every person's right to inspect and copy any public record generated by the three branches of government. It also allows the legislature (by a two-thirds vote of each house) to create an exemption to the public record requirements in section (a) "provided that such law shall state with specificity the public necessity justifying the exemption and shall be no broader than necessary to accomplish the stated purpose of the law." See also Rameses, Inc. v. Demings, 29 So. 3d 418, 421 (Fla. 5th DCA 2010) (noting: "[T]he

---

[1] Ironically, the City resumed its internal audit in January 2020, and issued a final audit report in September 2020, ten months after the notice of appeal was filed in this case. Although the City's internal audit and its report are now final, thereby rendering moot the issue between these parties, we nevertheless exercise our discretion to dispose of the appeal on the merits. Godwin v. State, 593 So. 2d 211, 212 (Fla. 1992) (noting three instances "in which an otherwise moot case will not be dismissed," including "when the questions raised are of great public importance," "are likely to recur," and "if collateral legal consequences that affect the rights of a party flow from the issue to be determined"). See, e.g., Mazer v. Orange Cty., 811 So. 2d 857 (Fla. 5th DCA 2002).

5

right of access to public records is virtually unfettered, save for statutory exemptions designed to achieve a balance between an informed public and the ability of the government to maintain secrecy in the public interest.") Chapter 119 (The Public Records Act) likewise sets forth the State's policy regarding access to public records, id. (providing: "It is the policy of this state that all state, county, and municipal records are open for personal inspection and copying by any person. Providing access to public records is a duty of each agency") and provides various public record exemptions, including those found in section 119.0713. See also § 119.011(8), Fla. Stat. (2019) (defining "exemption" as "a provision of general law which provides that a specified record . . . is not subject to the access requirements of [the Public Records Act].") Because Florida's public policy favors disclosure, "the Public Records Act is construed liberally in favor of openness, and exemptions from disclosure are construed narrowly and limited to their designated purpose." Rameses, 29 So. 3d 421. The government also bears the burden to show that a statutory exemption applies. Id.

Section 119.0713 provides that certain records of local government agencies are treated as confidential or otherwise exempt from treatment as public records under Chapter 119 and Article I, Section 24 of the Florida Constitution. For our purposes, the pertinent portion of section 119.0713, governing audits and audit reports, provides:

6

The audit report of an internal auditor and the investigative report of the inspector general prepared for or on behalf of a unit of local government ***becomes a public record when the audit or investigation becomes final. An audit or investigation becomes final when the audit report or investigative report is presented to the unit of local government.*** Audit workpapers and notes related to such audit and information received, produced, or derived from an investigation are confidential and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution until the audit or investigation is complete and the audit report becomes final or when the investigation is no longer active. An investigation is active if it is continuing with a reasonable, good faith anticipation of resolution and with reasonable dispatch.

§ 119.0713(2)(b) (emphasis added).

The highlighted portion of the statute is plain and unambiguous: An audit report "becomes a public record" only "when the audit. . .. becomes final." Unless and until an audit becomes final, the audit report is not subject to disclosure as a public record. Further, an audit "becomes final" only "when the audit report . . . is presented to the unit of local government."

This excerpted statutory language compels the conclusion that the draft audit reports were not subject to disclosure as public records, as it is undisputed that the audit was not final and the audit report had not been presented to the City Commission on the occasions that Miami New Times requested copies of these draft reports from the City.

Returning to this same subsection, we see that the Legislature addressed not only the audit report, but related "audit workpapers and notes" as well (which, Miami New Times contends, would include draft audit reports):

7

The audit report of an internal auditor and the investigative report of the inspector general prepared for or on behalf of a unit of local government becomes a public record when the audit or investigation becomes final. An audit or investigation becomes final when the audit report or investigative report is presented to the unit of local government. ***Audit workpapers and notes related to such audit*** and information received, produced, or derived from an investigation ***are confidential and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution until the audit*** or investigation ***is complete and the audit report becomes final*** or when the investigation is no longer active. An investigation is active if it is continuing with a reasonable, good faith anticipation of resolution and with reasonable dispatch.

§ 119.0713(2)(b) (emphasis added).

To the extent that the draft audit reports could be considered "audit workpapers and notes," the plain and unambiguous statutory language provides those records remain "confidential and exempt from" disclosure "until the audit. . . is complete and the audit report becomes final." Again, the audit is not "complete," and the audit report is not "final," until "the audit report is presented to the unit of local government."

Our duty in construing statutes is equally well established: we look first to the statute's plain meaning, and must initially be guided by the principle that if the wording of a statute is unambiguous, we should not go beyond the clear wording and plain meaning of the statute to give it a different meaning. City of Clearwater, 863 So. 2d 153; Streeter v. Sullivan, 509 So. 2d 268 (Fla. 1987). "When the words of a statute are plain and unambiguous and convey a definite meaning, courts have no occasion to resort to rules of construction—they must read the statute as written,

8

for to do otherwise would constitute an abrogation of legislative power." Nicoll v. Baker, 668 So. 2d 989, 990-91 (Fla. 1996).

The only reasonable construction of the plain and unambiguous statutory language at issue leads us to conclude that the draft audit reports had not become a public record subject to disclosure because the audit was not complete and the audit report was not final.

We reject Miami New Times' invitation to construe an "audit" and an "investigation" in identical fashion under section 119.0713(2)(b). In particular, Miami New Times advances this argument with regard to the final portion of the subsection, which provides:

> Audit workpapers and notes related to such audit and information received, produced, or derived from an investigation are confidential and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution **until the audit or investigation is complete and the audit report becomes final or when the investigation is no longer active. An investigation is active if it is continuing with a reasonable, good faith anticipation of resolution and with reasonable dispatch.**

Miami New Times posits that the statute should be construed in a manner that treats an "inactive audit" in the same manner as an "inactive investigation," and we should hold that when the City discontinued the internal audit in favor of an external audit, the internal audit was "no longer active," thereby making the draft audit reports subject to disclosure as public records.

9

The difficulty with this position, of course, is that the statute does not provide for a concept such as an "inactive audit." Further, treating "audit" and "investigation" in the same fashion would require us to ignore the very separate and distinct statutory treatment afforded them. The statute does not use the same triggering event for when audit documents and investigative documents become public records subject to disclosure. Instead, the statute contains distinct provisions for each:

"Audit workpapers and notes related to such audit" are confidential and exempt from public records disclosure:

1. "until the audit. . . is complete"; ___**and**___

2. "the audit report becomes final".

By contrast, "information received, produced, or derived from an investigation" are confidential and exempt from public records disclosure:

1. "until the. . . investigation is complete. . . ___**or**___"

2. "when the investigation is no longer active." "An investigation is active if it is continuing with a reasonable, good faith anticipation of resolution and with reasonable dispatch."

Thus, information from an investigation becomes subject to public records disclosure when the investigation is either complete or is no longer active.

Audit workpapers and notes, on the other hand, become subject to public records disclosure only after the audit is complete and the audit report becomes final. There is no equivalent treatment under the statute, and we will not engraft one onto the plain and unambiguous language provided by the Legislature. If the Legislature wanted to make "audit workpapers and notes" subject to public records disclosure under the same circumstances and to the same extent as "information received, produced, or derived from an investigation," it would have done so. To construe the statute in the manner suggested by Miami New Times would ignore, or altogether negate, other language within the same subsection. This we cannot do. See Jones v. ETS of New Orleans, Inc., 793 So.2d 912, 914–15 (Fla. 2001) (holding that a "statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts") (quoting Acosta v. Richter, 671 So. 2d 149, 153-54 (Fla. 1996)).

If the legislature "did not intend the results mandated by the statute's plain language, then the appropriate remedy is for it to amend the statute." Whitney Bank v. Grant, 223 So. 3d 476, 479 (Fla. 5th DCA 2017) (noting: "It is a settled rule of statutory construction that unambiguous language is not subject to judicial construction, however wise it may seem to alter the plain language. . . . If the legislature did not intend the results mandated by the statute's plain language, then

11

the appropriate remedy is for it to amend the statute.") (quoting <u>Overstreet v. State</u>, 629 So. 2d 125, 126 (Fla. 1993)).

It is undisputed that the City's audit was not complete, and the audit report had not been presented to the City Commission, when Miami New Times made its public records requests. As a result, the draft audit reports were not subject to disclosure under section 119.0713(2)(b). No public disclosure is mandated here because the statutory conditions precedent to the documents becoming subject to disclosure as public records—a completed audit and a final audit report—had not occurred.

We also reject Miami New Times' alternative contention that, even if the draft audit reports were exempt from disclosure under section 119.0713(2)(b), any entitlement to that exemption vanished once those draft reports, provided by the City to the auditee towing companies, were disclosed (without the City's knowledge or consent) by the towing companies to a third party.

To support its contention, Miami New Times relies on <u>Satz v. Blankenship</u>, 407 So. 2d 396, 398 (Fla. 4th DCA 1981), and similar cases, asserting that previous disclosure of information subject to a time-limited exemption allows for "further disclosure." <u>Id.</u> (holding: "At the point of disclosure, the information became public in a sense and as public information, it lost its efficacy in deterring criminal activity.") <u>See also</u> <u>Bludworth v. Palm Beach Newspapers, Inc.</u>, 476 So. 2d 775,

778 (Fla. 4th DCA 1985) (pronouncing: "[W]e reaffirm what we held in Blankenship; namely, that once documents are released, the legislature intended an end to secrecy about those documents); Downs v. Austin, 522 So. 2d 931 (Fla. 1st DCA 1988) (recognizing: "Satz and Bludworth evince a judicial recognition that once the State has gone public with information which could have previously been protected from disclosure under the Act's exemptions, no further purpose is served by preventing full access to the desired documents or information"); Staton v. McMillan, 597 So. 2d 940, 941 (Fla. 1st DCA 1992) (holding: "The active criminal investigative information exemption thus does not apply to information which has previously been made available at a public hearing.")

However, "these decisions are factually and legally distinguishable as they involve the exemption for either 'active criminal intelligence information' or 'active criminal investigative information,' which are not the exemptions at issue." Rameses, 29 So. 3d 422. More specifically, these decisions mostly address a statutory exception to a general public records exemption.

In Satz, 407 So. 2d at 397, for example, the State Attorney "came into possession of certain tape recorded conversations" in the course of a police investigation leading to the defendant's arrest. During the criminal proceedings, the prosecution provided defendant's attorney with access to the tape-recorded conversations. After these recordings were made available to defense counsel, a

news reporter sent a public records request to the State Attorney, seeking a copy of the tape recordings. The question for the court was whether tape recordings (which were part of the evidence gathered in the course of a criminal investigation) were "documents" within the meaning of section 119.011(3)(c)5, Florida Statutes (1979). This section excludes "[d]ocuments . . . given to the person arrested" from the public records exemption in section 119.071(2)(c)1 (exempting from disclosure "active criminal intelligence and investigative information"). In other words, although section 119.071(2)(c)1 provides a general exemption from public records disclosure of "active criminal intelligence information" and "active criminal investigative information," section 119.011(3)(c)5 specifically excludes from that defined exemption (i.e., treats as a public record subject to disclosure) "[d]ocuments given or required by law or agency rule to be given to the person arrested."

The Fourth District, construing the statute (section 119.01), its exemption (section 119.011(3)(a) for active criminal intelligence/investigative information), and the exception to the exemption (section 119.011(3)(c)5, providing that documents provided to a person arrested are not exempt from disclosure under public records law), held that the tape recordings were "documents" under section 119.011(3)(c)5 and, once they were given to the person arrested, they fell within the exception to the exemption and thus statutorily subject to inspection and copying as public records. Id. at 398. See also Bludworth, 476 So. 2d 778 (noting: "The issue

14

is whether section 119.011(3)(c) 5, Florida Statutes (1983), which excludes from the definitions of 'criminal intelligence information' and 'criminal investigation information' '[d]ocuments given or required by law or agency rule to be given to a person arrested,' should be construed narrowly so as to refer only to such information as shows the basis for the person's arrest. . . .")

There is no comparable exception to the statutory exemption in this case. And as the courts did in those cases cited by Miami New Times, we rely upon judicial construction of specific statutory provisions to determine whether disclosure was required. In doing so, we find that it was not: The disclosure of these draft reports by the towing companies to a third party, without the knowledge or consent of the City, did not alter their status so as to render them subject to disclosure as public records.

## **CONCLUSION**

Under the plain and unambiguous statutory language of section 119.0713(2)(b), the draft audit reports were not subject to disclosure as public records. The trial court erred in granting the petition for writ of mandamus and compelling the City to provide these reports to Miami New Times. We therefore quash the order granting the writ of mandamus, and remand for further proceedings consistent with this opinion.