DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GRANVILLE WILLIAMS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D22-767

[May 24, 2023]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Stacy M. Ross, Judge; L.T. Case No. 00-12637CF10A.

Matthew J. Conigliaro of Carlton Fields, P.A., Tampa, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Alexandra A. Folley, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

This is a case of first impression regarding a Florida law protecting human trafficking victims. The defendant appeals an order denying his amended petition to expunge his criminal record based on that law, section 943.0583, Florida Statutes (2018). He argues the trial court erred in failing to apply the statutory presumption in favor of expunction. We agree and reverse.

In 2001, the defendant pled guilty to one count of trafficking cocaine.[1] The trial court sentenced him to three years in prison with credit for 317 days served, followed by three years' probation as a youthful offender.[2]

---

[1] The State explained customs officials stopped the defendant at the Fort Lauderdale International Airport after arriving on a flight from Jamaica. An inspector found fourteen pellets in a bottle in his luggage and ten pellets in his groin area. The defendant had also swallowed ten latex-covered pellets.

[2] The trafficking charge carried a penalty of up to thirty years in prison and a $100,000 fine, with a minimum mandatory sentence of seven years.

Discovery confirmed while the defendant was in Jamaica, adults approached him and convinced him to be a mule — to transport pellets into Florida. He was told he would make a lot of money but not that the pellets contained cocaine.

The plea hearing transcript further revealed the defendant was seventeen at the time he committed the offense. He was a high school senior and had already been accepted into the U.S. Army. While incarcerated prior to his plea, he obtained a GED certificate. He had no prior criminal history.

His attorney asserted two mitigating factors for sentencing: (1) the defendant was a youthful offender, and (2) he was "acting under the influence of duress or the domination of another individual." The defendant's mother testified her son was friendly but young and gullible. He stood before the court on a criminal charge "because some underhanded person has used him."

The State asked the court to sentence the defendant to four years in prison with two years of community control because:

> [P]eople who use young people in other countries to haul drugs into our states, they tell them that even if you get caught, nothing bad will happen to you. You're a juvenile. Don't worry about it.

The trial court required the defendant to plead guilty. The defendant agreed to do so and admitted knowing he was transporting cocaine.

- **The Petition**

In 2018, the defendant petitioned to expunge the criminal history associated with his cocaine trafficking conviction. The petition stated the defendant had been a minor and a victim of human trafficking as defined under Florida and federal law.

The defendant attached a sworn statement attesting to his eligibility for expunction. His statement gave a detailed account of his life and the events surrounding his criminal conviction. Specifically, the statement explained the defendant was born in Jamaica and legally immigrated to the United States in 1997 as a permanent resident.

When the cocaine trafficking incident occurred, he was a high school senior, about to graduate, and had already signed a contract with the

United States Army to enter basic training at Fort Jackson. Shortly before then, a person known to him as a "cousin" invited him on an all-expense paid trip to Jamaica. He did not know what he was getting into and was unaware of drug trafficking schemes that used children to transport drugs.

Once he arrived in Jamaica, he met "Mattic" or "Mattie," the leader of the scheme, who demanded he swallow white capsules and return to Florida, where Mattic's counterpart would extract them. According to his statement, the defendant refused at first, but Mattic threatened to kill him and forced him to comply. He was forced to swallow capsules until he could not swallow more.

When he arrived in Fort Lauderdale, he and another carrier were detained at the airport. The defendant informed customs officials he had been forced to carry drugs. He then cooperated with federal law enforcement in the other carrier's prosecution.

After his prison sentence and probation were completed, he was re-sentenced to five years in prison for violating probation. He appealed the sentence. We requested a status report regarding the defendant's pending motion for reconsideration. *See Williams v. State,* Case No. 4D06-4878 (Fla. 4th DCA Jan. 12, 2007, order). The trial court thereafter granted his motion for reconsideration and vacated the five-year sentence.

Despite the defendant's success in avoiding the re-sentencing, the Department of Homeland Security deported him to Jamaica. There, he claims Mattic and others accosted him, physically abused him, and burglarized his residence in retaliation for his assistance in the other carrier's prosecution.

The sworn statement explained the defendant returned to the United States years later but was arrested for illegal re-entry. While in federal detention, he read a book called *Slaves Next Door*, and he obtained counseling from a New York organization called Safe Horizon Anti-Trafficking Unit. Since then, he has tried to rebuild his life.

The petition also attached a 2013 letter from a case manager with Safe Horizon. The case manager, who had extensive experience with human trafficking victims, shared his conclusion that the defendant was indeed a victim of human trafficking in connection with his cocaine trafficking offense. The case manager related details not revealed in the 2001 plea colloquy or in the defendant'2018 sworn statement. For instance, the case manager stated that, according to the defendant, he was too frightened to

3

ingest the drugs and so hid them in his luggage. The petition characterized the Safe Horizon letter as official documentation supporting the petition.

- **The State's First Response and The Trial Court's First Order**

The State filed a written objection to the petition. Confusing the human trafficking victim expunction statute with another statute, the State's two-line response argued the defendant was not eligible for expunction because he had been convicted under section 893.135. The defendant responded that section 943.0583 identified crimes for which expunction was unavailable, but a conviction under section 893.135 was not one of them.

The trial court denied the petition. The trial court quoted section 943.059, Florida Statutes — a statute not invoked by the defendant — as providing criminal history records under section 893.135 are not eligible to be sealed.

- **The Motion for Rehearing**

The defendant promptly moved for rehearing, explaining he requested human trafficking victim expunction pursuant to section 943.0583, not section 943.059. By section 943.0583's plain language, expunction is available when the statute's criteria are met, "[n]otwithstanding any other provision of law . . . ." § 943.0583(2), Fla. Stat. (2018).

The State attached the transcript from the defendant's 2001 plea hearing and claimed those statements were in "stark contrast" to the sworn statement's discussion about being threatened and forced to transport cocaine to Florida. The State claimed the defendant changed his story after meeting the Safe Horizons counselor. The State claimed the defendant "had the opportunity to allege duress as a defense back in 2001."

The State's second response argued the defendant had been filing motions for postconviction relief with no legal basis and claimed this was another "means to accomplish his desired effect." The State ignored that the pro se defendant had successfully appealed his incorrect five-year sentence imposed after his probation had expired.

Finally, the State suggested the 2013 Safe Horizon letter did not qualify as official documentation issued by a federal, state, or local agency. The State argued, absent official documentation issued by a federal, state, or local agency tending to show the defendant was a victim of human

trafficking, the defendant bore the burden of proving that status by clear and convincing evidence.

- **The Amended Petition**

The defendant filed an amended petition, submitting additional supporting documentation. That documentation included the following: the 2001 plea hearing's certified transcript, the July 2000 complaint from the other carrier's federal prosecution, and an affidavit from the customs agent who investigated the other carrier's arrival from Jamaica on June 28, 2000. The complaint charged the other carrier with importing cocaine, and the supporting affidavit explained it was the other individual (the defendant) to whom an airport canine alerted because he had latex-covered pellets in his pocket and luggage. The defendant told authorities he was traveling with the other carrier, and investigators eventually determined the other carrier had swallowed ninety-six latex-covered pellets of cocaine.

The second document from the other carrier's federal prosecution explained that he was to be paid $3,300 for transporting the cocaine. He identified the supplier in Jamaica as someone named "Matt."

The other carrier's prosecution documents corroborated the statements made at the defendant's plea hearing, his statements to Safe Horizon in 2013, and his 2018 sworn statement. Among other things, the other carrier's documents supported the pair were paid couriers and that authorities caught them after the defendant would not swallow all the latex-covered capsules. The narcotics canine alerted to capsules in his luggage and his pants pocket.

- **The Hearing**

A new trial court heard the amended petition and the rehearing motion directed at the prior court's order denying relief. At the outset, the trial court acknowledged the prior denial was in error and that a new hearing should be held. The trial court took judicial notice of the five exhibits attached to the petitions and accepted the exhibits into evidence.

For both the original and amended petitions, the defendant argued he presented official documentation issued by a federal, state, or local agency, tending to show he was a human trafficking victim. Doing so created a presumption in his favor, and nothing overcame it. He argued that, even without the presumption, he had been a minor who was exploited by drug traffickers.

5

The State responded the Safe Horizons letter was not official documentation under the statute. The State did not argue the hearing transcript was not official documentation. The State also argued the defendant's statements were inconsistent. The plea hearing statements focused on making money, whereas the more recent statements focused on being forced to carry drugs.

The State emphasized the defendant brought the drugs into the country to make money; he was not a victim of human trafficking. The State argued bringing drugs to Florida on a plane was not labor. But, under the human trafficking victim expunction statute, coercion is not a required element for someone under 18, and labor simply means work of economic or financial value.

- **The Trial Court's Ruling**

The trial court denied the amended petition. The trial court found the defendant was not entitled to relief because his "rendition of events lack[ed] credibility due to a considerable lack of consistency" between the statements presented at the plea hearing and his amended petition. The order was silent as to the statutory presumption.

From this order, the defendant now appeals.

We review an order denying a petition to expunge criminal history for an abuse of discretion. *M.G. v. State*, 260 So. 3d 1094, 1097 (Fla. 3d DCA 2018). However, we review a trial court's statutory interpretation de novo. *Id.*

Florida has long authorized expunction of criminal history records under various circumstances but did not adopt a human trafficking victim expunction statute until 2013. *See* ch. 2013-98, § 2, Laws of Fla. (2013). Section 943.0583 took effect on January 1, 2014, over 12 years after the defendant pled guilty.

- **Section 943.0583**

The preamble to chapter 2013-98, Laws of Florida (2013), states "victims of trafficking may be forced to engage in a variety of illegal acts beyond prostitution" and "trafficked persons have not always been recognized as victims by the police and prosecutors and plead guilty or do not understand the consequences of criminal charges." *Id.* (preamble). In companion legislation, the legislature additionally found: "Persons who

6

are victims of human trafficking and who have been convicted of crimes committed at the behest of their traffickers are themselves victims of crimes." Ch. 2013-99, § 2, Laws of Fla. (2013).

Section 943.0583 offers three definitions of who is a "victim of human trafficking:"

- a person subjected to coercion, as defined in s. 787.06, for the purpose of being used in human trafficking

- a child under 18 years of age subjected to human trafficking, or

- an individual subjected to human trafficking as defined by federal law.

§ 943.0583(1)(c), Fla. Stat. (2018). "Human trafficking" is given the same meaning as provided in section 787.06. § 943.0583(1)(a), Fla. Stat. (2018). The term means:

transporting, soliciting, recruiting, harboring, providing, enticing, maintaining, purchasing, patronizing, procuring, or obtaining another person for the purpose of exploitation of that person.

§ 787.06(2)(d), Fla. Stat. (2018).

A person may petition the appropriate circuit court to expunge the criminal history record of a victim of human trafficking who complies with the statute. § 943.0583(2), Fla. Stat. (2018). A petition must be accompanied by the petitioner's sworn statement. *Id.* (6)(a).

A petition may also be accompanied by "[o]fficial documentation of the victim's status," which "creates a presumption that his or her participation in the offense was a result of having been a victim of human trafficking . . . ." *Id.* "Official documentation" means "any documentation issued by a federal, state, or local agency tending to show a person's status as a victim of human trafficking." *Id.* (1)(b).

In such instances, the court should determine the petition based on the preponderance of the evidence standard. *Id.* (3). But if a petition is not accompanied by official documentation of victim status, then a determination on the petition must be made by a showing of clear and convincing evidence. *Id.* (5).

7

Section 943.0583 imposes a presumption of human trafficking victim status upon the presentation of certain documentation, and it offers broad relief to those who have been victimized, particularly minors. Official documentation is defined to mean "any documentation issued by a federal, state, or local agency tending to show a person's status as a victim of human trafficking." *Id.* (1)(b).

Here, the defendant presented the requisite documentation entitling him to the statutory presumption. The 2001 plea hearing transcript was documentation issued by a state or local agency that showed the defendant was a victim of human trafficking.

In fact, the prosecutor at the plea hearing expressly embraced the theory the defendant had been recruited and told he would not be punished because he was a child. The State sought a significant prison sentence just for the purpose of sending a message not to use children to bring drugs into the state.

The trial court failed to afford the defendant the statutory presumption to which he was entitled. And, although his two descriptions of what happened at the 2001 plea hearing and in his 2018 sworn statement were not identical, they did not conflict. At the plea hearing, defense counsel specifically asked the court to consider the defendant committed the offense under duress or domination of another individual. That is entirely consistent with his more detailed explanation of the events giving rise to his charges.

In *Baker v. State*, 53 So. 3d 1147 (Fla. 1st DCA 2011), the First District addressed section 943.0585, which authorizes expungement or sealing of criminal history records. The First District held that while that statute does not create a right to the expunction of any criminal history record, satisfaction of the statutory criteria creates a presumption in favor of expunction, upon which a trial court abuses its discretion in denying an expungement petition without a factual basis to do so. *Id.* at 1148; *see also Harmon v. State*, 12 So. 3d 898, 899 (Fla. 2d DCA 2009).

Here, the trial court's decision rested on its determination the defendant was not credible. Yet, no reasonable review of this record negates the defendant's claim that he had participated in the trafficking offense as a human trafficking victim. The predicate for the defendant's plea and his requests for sentencing leniency was his status as a minor who had failed to appreciate the seriousness of his actions and acted under duress.

Even if an actual inconsistency existed, it would be of no moment. Section 943.0583 clearly provides that coercion is not required where the person is under 18 years of age. § 943.0583(1)(c), Fla. Stat. (2018). Because the defendant was a minor at the time, he would qualify as a victim of human trafficking regardless of whether he was coerced to do so. An inconsistency over a non-material fact does not rebut the presumption of human trafficking and entitlement to expunction of his criminal records.

The trial court abused its discretion by failing to afford the defendant the statutory presumption and by finding a conflict where none existed. We reverse and remand the case to the trial court for reconsideration and application of the statutory presumption.

*Reversed and Remanded.*

CIKLIN and KUNTZ, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

9